HAWAII GOVERNMENT EMPLOYEES' ASSOCIATION, AFSCME, LOCAL 152, AFL-CIO, Plaintiff-Appellee, *v.* ROBERT ARMBRUSTER, RICHARD CARPENTER, JAMES FAWCETT, CHARLES JOHNSON, TOUFIQ SIDDIQI, and KIRK SMITH, Defendants-Appellants, and GARY HANSEN, DONINE HEDRICK, SIEW-EAN KHOO, LUCINDA NAKAMURA, and ROY STUBBS, Defendants

NO. 8925

(CIVIL NO. 63593)

APRIL 17, 1984

BURNS, C.J., TANAKA, J., AND CIRCUIT JUDGE SIMEON R. ACOBA, JR. IN PLACE OF ASSOCIATE JUDGE HEEN, RECUSED

OPINION OF THE COURT BY TANAKA, J.

Defendants Richard Armbruster and five other employees (collectively appellants) of the Center for Cultural and Technical Interchange between East and West, Inc. (East-West Center) appeal the money judgment in favor of plaintiff Hawaii Government Employees' Association, AFSCME, Local 152, AFL-CIO (HGEA) for unpaid service fees due under the collective bargaining agreements between East-West Center and HGEA. The issue on appeal is whether those agreements are enforceable against appellants. We answer yes and affirm.

I.

A.

This case is related to *Armbruster v. Nip*, 5 Haw. App. 37, 677 P.2d 477 (1984), and the facts and holding of that case are pertinent and applicable here.

Prior to its creation as an educational non-profit public corporation by Act 82, 1975 Haw. Sess. Laws 143, effective July 1, 1975, East-West Center was a part of the University of Hawaii (University), a state institution. East-West Center employees were then represented by HGEA in four bargaining units under collective bargaining agreements negotiated pursuant to the Collective Bargaining in Public Employment Act (CBPEA), Hawaii Revised Statutes (HRS) chapter 89 (1976 & Supp. 1983).

In March 1976, HGEA and East-West Center entered into a collective bargaining agreement which combined the four pre-existing bargaining units into one East-West Center unit. The agreement did not require non-HGEA members to pay service fees. It was ratified by the employees by a vote of 100 to 3. From time to time the agreement was renewed and modified.

Effective August 1, 1979, HGEA and East-West Center entered into a collective bargaining agreement (1979 Agreement). Section A of Article 3 of the 1979 Agreement provided:

Union membership by Employees shall be voluntary. However, all Employees in the bargaining unit who are not members of the Union shall be subject to payment of service fees to the

Union to defray the costs of services rendered by the Union to such Employees in negotiating and administering this Agreement. The Union reserves all rights against such Employees for the collection of such service fees. Union membership notwithstanding, all agreements reached shall be uniformly applied to all Employees.

The 1979 Agreement was ratified by a majority of the East-West Center employees voting in a secret ballot election in which all employees were eligible to vote.

HGEA and East-West Center entered into another collective bargaining agreement effective August 1, 1980 and expiring July 31, 1983 (1980 Agreement) which included a service fees provision identical to Section A of Article 3 of the 1979 Agreement. A majority of the employees voting in a secret ballot election ratified the 1980 Agreement. The identical service fees provisions in the 1979 and 1980 Agreements are hereinafter referred to collectively as "Section A."

The service fees payable by non-members were equivalent to the dues paid by HGEA members.

**B.**

On November 24, 1980, HGEA sued appellants and five others, all non-HGEA members, to collect unpaid service fees due under the 1979 and 1980 Agreements. In the answer filed on March 9, 1981, defendants denied that HGEA was the exclusive bargaining representative of East-West Center employees and interposed numerous affirmative defenses.

After a bench trial, the trial court entered its findings of fact, conclusions of law, and decision and judgment on May 3, 1982. Appellants thereafter filed their notice of appeal.[1]

**II.**

Appellants challenge Finding and Conclusion No. 10[2] and con-

---

[1] In the court below, all defendants other than appellants were dismissed or dropped from the case.

[2] In the "Findings of Fact, Conclusions of Law and Decision" filed on May 3, 1982, the findings and conclusions are not listed separately. Although there are

tend that the 1979 and 1980 Agreements are invalid and unenforceable against them for two reasons: first, there was no secret ballot election whereby HGEA was selected by the East-West Center employees as their exclusive representative; and, second, East-West Center professional employees, including appellants, were never given an opportunity by secret ballot or otherwise to refuse classification in a collective bargaining unit with clerical and other non-professional employees.

In *Armbruster v. Nip, supra,* we held that the employment relations between East-West Center and its employees are governed by the Hawaii Employment Relations Act (HERA), HRS chapter 377 (1976 & Supp. 1983), and fall within the jurisdiction of the Hawaii Employment Relations Board (HERB).

We conclude that Act 82 and HERA do not support appellants' contentions.

A.

Appellants note that HRS § 377-4 (1976) accords employees the right "to bargain collectively through representatives of their own choosing." They argue that (1) after the effective date of Act 82, a secret ballot election was required to determine whether the majority of East-West Center employees desired HGEA as their collective bargaining representative; (2) since such election was never held, HGEA cannot be the representative of East-West Center employees; and (3) therefore, the 1979 and 1980 Agreements negotiated and executed by HGEA are illegal and unenforceable. We do not agree.

We have stated that "[w]hen two statutes cover the same subject, the specific statute takes precedence over the general one." *Aetna*

---

eleven numbered "Findings and Conclusions," appellants challenge only Finding and Conclusion No. 10 which reads:

   Validity of the agreements is not affected by the fact (a) that there were no secret ballot elections, prior to negotiation of the agreements, designating HGEA as exclusive bargaining representative of East West Center Employees, or (b) that professional employees, including defendants, were not given an opportunity to vote in a secret ballot election whether or not they wished to be in the same bargaining unit as the non-professionals.

*Life Insurance Co. v. Park,* 5 Haw. App. 122, 126, 678 P.2d 1104, 1107 (1984); *see also In re Smart,* 54 Haw. 250, 505 P.2d 1179 (1973).

Appellants have mistakenly focused on the general statute, HERA, rather than the specific legislation, Act 82. In particular, Section 8(e) of Act 82 provides:

> [East-West Center] shall recognize the continuing effect of collective bargaining agreements in effect on the effective date of this Act covering employees of the East-West center until such agreements are altered or amended by the parties in conformance with all applicable laws.

By that provision, the legislature evinced its intent that HGEA, the collective bargaining representative while East-West Center was a part of the University, would continue to be the representative of the East-West Center employees after the effective date of Act 82 on July 1, 1975, and that HGEA's representative status would change only in conformance with pertinent HERA provisions.

HERA specifies the mechanism and procedure for the removal or replacement of the collective bargaining representative. HRS § 377-5(c) provides that "[w]henever a question arises concerning the representation of employees in a collective bargaining unit, [HERB] shall determine the representatives thereof by taking a secret ballot of employees and certifying in writing the results thereof to the interested parties and to their employer." HRS § 377-5(d) states that questions involving representation "may be raised by petition of any employee, or group of employees, or his representative, or labor organization acting in their behalf, . . . ."

Thus, if appellants believed anytime after July 1, 1975, that the majority of East-West Center employees did not favor HGEA as their collective bargaining representative, they could have petitioned HERB to conduct a secret ballot representative election. Not having done so, appellants have no cause to complain.

We hold that after the effective date of Act 82, HGEA continued as the collective bargaining representative of East-West Center employees and was authorized to negotiate and execute the 1979 and 1980 Agreements.

B.

Nevertheless, appellants assert that (1) they are professional

employees; (2) they have the right to refuse to be classified in a collective bargaining unit with clerical and administrative employees; (3) Section A which requires them to pay service fees "to the bargaining representative of an involuntarily mixed unit of clerical, administrative and professional employees without the consent of said professional employees is void," Opening Brief at 25; and (4) thus, Section A is unenforceable against them. HERA does not support appellants' stance.

Section 377-1(6), HRS (1976), defines a "collective bargaining unit" to mean:

. . . all of the employees of one employer (employed within the State), except that where [HERB] has determined and certified that such employees engaged in a single craft, division, department, or plant as provided in section 377-5(b) constitute a separate bargaining unit they shall be so considered.

Section 377-5(b), HRS (1976), provides as follows:

Whenever a question arises concerning the determination of a collective bargaining unit as defined in section 377-1, [HERB], in order to assure to employees the fullest freedom in exercising the rights guaranteed by this chapter, shall conduct an appropriate hearing upon due notice and it shall decide in each case the unit appropriate for the purpose of collective bargaining.

Clearly, HERA does not confer upon the professional employees of East-West Center an automatic right to be deemed to constitute a separate bargaining unit. HRS § 377-5(b) mandates that appellants raise a question "concerning the determination of a collective bargaining unit" presumably by a petition and that HERB determine the appropriate bargaining unit after a hearing upon due notice.

Prior to July 1, 1975, East-West Center employees, as public employees of the University, constituted four bargaining units under CBPEA. However, in 1976, HGEA and East-West Center properly combined the four bargaining units into one East-West Center unit because basically "all of the employees of one employer" constitute a collective bargaining unit under HERA. Thereafter, if appellants felt that the professional employees should constitute a bargaining unit separate and apart from the clerical and administrative employees of East-West Center, they

were obligated to follow the requirements of HRS § 377-5(b). Again, having failed to do so, they have no legitimate complaint.

The fact that the professional employees were lumped together with the clerical and administrative employees into one East-West Center bargaining unit did not vitiate Section A of the 1979 and 1980 Agreements regarding the payment of service fees by non-HGEA members.

### III.

Finally, appellants contend that (1) Section A in the 1979 and 1980 Agreements is an "agency shop" agreement; (2) HRS chapter 377 does not authorize or allow such agreements; and (3) consequently, Section A is void and unenforceable. We disagree.

### A.

Section 377-6(3), HRS (1976), reads:

It shall be an unfair labor practice for an employer individually or in concert with others:

\* \* \* \* \*

(3) To encourage or discourage membership in any labor organization by discrimination in regard to hiring, tenure, or other terms or conditions of employment. An employer, however, may enter into an all-union agreement with the bargaining representative of his employees in a collective bargaining unit, unless [HERB] has certified that at least a majority of the employees have voted to rescind the authority of their bargaining representative to negotiate such all-union agreement within one year preceding the date of the agreement. No employer shall justify any discrimination against any employee for nonmembership in a labor organization if he has reasonable grounds for believing that:

(A) Such membership was not available to the employee on the same terms and conditions generally applicable to other members;

(B) Or that membership was denied or terminated for reasons other than the failure of the employee to

tender periodic dues and the initiation fees uniformly required as a condition for acquiring or retaining membership.

Section 377-1(9), HRS (1976), defines "all union agreement" to mean "an agreement between an employer and the representative of his employees in a collective bargaining unit whereby all of the employees in such unit are required to be members of a single labor organization." An "all union agreement" is really a "union shop" agreement which has been defined by the United States Supreme Court to mean an agreement which "provides that no one will be employed who does not join the union within a short time after being hired." *Oil, Chemical & Atomic Workers International Union v. Mobil Oil Corp.*, 426 U.S. 407, 409 n.1, 96 S. Ct. 2140, 2141, 48 L.Ed.2d 736, 739-40 (1976).

The Court has stated that "[a]n 'agency shop' agreement generally provides that while employees do not have to join the union, they are required — usually after 30 days — to pay the union a sum equal to the union initiation fee and are obligated as well to make periodic payments to the union equal to the union dues." *Id.*

Appellants and HGEA agree that Section A in the 1979 and 1980 Agreements created an "agency shop." They disagree, however, on whether HRS § 377-6(3) authorizes or allows an "agency shop" agreement. Appellants contend that HRS § 377-6(3) explicitly permits only an "all union" agreement. HGEA argues that an "agency shop" agreement is legal under the provisions of the National Labor Relations Act (the Act), 29 U.S.C. §§ 151, *et seq.* (1976 & Supp. IV 1980), and it is similarly legal under HRS § 377-6(3). We agree with HGEA.

### B.

Section 8(a)(3) of the Act, 29 U.S.C. § 158(a)(3), provides in pertinent part:

(a) It shall be an unfair labor practice for an employer —

\* \* \* \* \*

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization:

*Provided,* That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization . . . to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement . . . .

Despite the lack of any express language in § 8(a)(3) of the Act authorizing an "agency shop" agreement, the Supreme Court has nevertheless held that the "agency shop" is not an unfair labor practice under that section. *NLRB v. General Motors Corp.,* 373 U.S. 734, 83 S. Ct. 1453, 10 L.Ed.2d 670 (1963). The Court stated that when Congress amended the section in 1947 it intended to accomplish two purposes. First, by abolishing the closed shop, the most serious abuses of compulsory unionism were eliminated. Second, by permitting termination of union membership for failure to tender periodic dues and initiation fees, Congress intended to eliminate "free riders." The Court found no Congressional intent "to validate only the union shop and simultaneously to abolish, in addition to the closed shop, all other union-security arrangements permissible under state law." 373 U.S. at 741, 83 S. Ct. at 1458, 10 L.Ed.2d at 675. In upholding the "agency shop" under Section 8(a)(3), the Court reasoned that:

The proposal for requiring the payment of dues and fees imposes no burdens not imposed by a permissible union shop contract and compels the performance of only those duties of membership which are enforceable by discharge under a union shop arrangement. If an employee in a union shop unit refuses to respect any union-imposed obligations other than the duty to pay dues and fees, and membership in the union is therefore denied or terminated, the condition of "membership" for § 8(a)(3) purposes is nevertheless satisfied and the employee may not be discharged for nonmembership even though he is not a formal member.

373 U.S. at 743, 83 S. Ct. at 1459-60, 10 L.Ed.2d at 676 (footnote omitted).

C.

Since the enactment of HERA in 1945, HRS § 377-6(3) was amended only in 1959 when its present form and language were

adopted. *See* Act 210, 1959 Haw. Sess. Laws 141. The legislative purpose of Act 210 was to "[m]odify the provisions relating to all union agreements so that they will be similar to the National Labor Relations Act." Hse. Stand. Comm. Rep. No. 570, in 1959 House Journal, at 791. The legislature thereby intended that "all union" agreements under HRS § 377-6(3) be treated like "union shop" agreements under § 8(a)(3) of the Act. We perceive an intent also that the provisions of HRS § 377-6(3) be construed similarly to its counterpart, § 8(a)(3).

The rationale of the Supreme Court in *NLRB v. General Motors Corp., supra,* is as sound in its application to HRS § 377-6(3) as it is to § 8(a)(3). The "agency shop" imposes no burdens not imposed by the "all union" agreement expressly permitted by HRS § 377-6(3). Furthermore, the enactment in 1970 of CBPEA, which provides in HRS § 89-4 (1976 & Supp. 1983) that all public employees in the appropriate bargaining unit pay service fees to their exclusive representative, supports the view that the legislature favors the elimination of "free riders" and prefers that all employees who receive the benefits of union representation contribute their fair share of financial support to such union.

"The policy as well as the letter of the law is a guide to decision." *Montalvo v. Chang,* 64 Haw. 345, 356, 641 P.2d 1321, 1329 (1982) (quoting *Markham v. Cabell,* 326 U.S. 404, 409, 66 S. Ct. 193, 195, 90 L.Ed. 165, 168 (1945)). *Cf. Barcena v. Hawaiian Insurance & Guaranty Co., Ltd.,* 67 Haw. 97, 678 P.2d 1082 (1984). Accordingly, we hold that HRS § 377-6(3) does not prohibit "agency shop" agreements. Consequently, Section A of the 1979 and 1980 Agreements is valid and enforceable.

Affirmed.

*Gregory M. Sato (Jared H. Jossem and Jeffrey S. Harris* with him on the brief; *Torkildson, Katz, Jossem & Fonseca,* of counsel) for defendants-appellants.

*Benjamin C. Sigal (Shim, Sigal, Tam & Naito,* of counsel) for plaintiff-appellee.