SURVIVORS OF WALLACE MEDEIROS, DECEASED, Claimant-Appellees, *v.* MAUI LAND AND PINEAPPLE COMPANY, Employer-Appellant, Self-Insured, and GRAYLINE-MAUI AND HAWAIIAN INSURANCE AND GUARANTY COMPANY, Employer, Insurance Carrier-Appellee, and SPECIAL COMPENSATION FUND, Appellee

NO. 8317

CASE NO. AB 78-362(M)
(7-76-01409)

MARCH 9, 1983

LUM, ACTING C.J., PADGETT AND HAYASHI, JJ., CIRCUIT JUDGE CHUN, ASSIGNED IN PLACE OF NAKAMURA, J., DISQUALIFIED, AND CIRCUIT JUDGE GREIG, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY HAYASHI, J.

Maui Land and Pineapple Company (Maui Pine), a former employer of decedent Wallace Medeiros, appeals the decision of the Labor and Industrial Appeals Board (Board), denying apportionment of death benefits between Maui Pine and the Special Compensation Fund (SCF) and granting attorney's fees and costs, payable by Maui Pine, to Grayline-Maui, a former concurrent employer of Wallace Medeiros. The issues raised on appeal are the propriety of not apportioning death benefits in this case and of assessing one employer for the attorney's fees and costs of a concurrent employer when the former instituted the appeal and lost. For reasons set forth below, we affirm the Board's decision.

Medeiros had been employed by Maui Pine from February 1950 until his death on May 1, 1976. At the time of his death, Medeiros was concurrently employed by Grayline-Maui. The findings of the Board pertinent to this appeal are that Medeiros had suffered from severe cardiovascular disease, had suffered a severe myocardial infarction two to six weeks prior to his death, and had suffered a myocardial infarction which resulted in his death on May 1, 1976.

The Board concluded that Maui Pine was liable for death benefits and for reasonable attorney's fees and costs incurred by Grayline-Maui. Subsequently, the Board denied Maui Pine's motions to reconsider its denial of apportionment and to strike Grayline-Maui's request for approval of attorney's fees and costs. This appeal followed.

I.

Maui Pine correctly avers that the appeals board erred in perfunctorily holding death benefits nonapportionable under Hawaii Revised Statutes (HRS) § 386-33 in light of *Crawford v. Financial Plaza Contractors,* 64 Haw. 415, 643 P.2d 48 (1982), wherein this court held that the special compensation fund would be liable for a portion of death benefits owed an

employee's dependents "[w]here an employee with a permanent partial disability which preexists employment dies as a result of a combination of that preexisting disability and a subsequent work-related injury." *Id.* at 424, 643 P.2d at 54. However, notwithstanding what we perceive to be erroneous reasoning on the part of the appeals board in denying Maui Pine's request for apportionment, we hesitate to reverse on that ground for "we have repeatedly held that where [a] trial court has reached a correct conclusion, its decision will not be disturbed on the ground that the reasons it gave for its actions were erroneous." *Federal Express Corp. v. Fasi,* 56 Haw. 57, 64, 527 P.2d 1284, 1289-90, *reh'g denied* 56 Haw. 706 (1974); *Keawe v. Hawaiian Electric Co.,* 65 Haw. 232, ___, 649 P.2d 1149, 1153 (1982); *Hawaii Carpenters' Trust Funds v. Aloe Development Corp.,* 63 Haw. 566, 578, 633 P.2d 1106, 1113 (1981). The same deference must be afforded an administrative decision in light of HRS § 91-14(g) of the Administrative Procedures Act which precludes judicial reversal or modification of an administrative decision even where affected by error of law, as in this case, unless substantial rights of the petitioner may have been prejudiced.

Thus, we must determine whether the Board reached a correct conclusion on the issue of apportionability in spite of its reasoning. *Crawford* set forth three conditions which must be met before it becomes incumbent upon the Director of Labor and Industrial Relations to determine the relative contributions of the two injuries to the cause of death and apportion death benefits between the employer and the SCF accordingly. The conditions are, one, the employee must have had a permanent partial disability; two, the permanent partial disability must preexist employment; and, three, the employee's death must result from a combination of the preexisting disability and a subsequent work-related injury.

Maui Pine contends, in its opening brief, that apportionment is proper where "medical evidence and specific findings of fact [indicate] that Claimant suffered from severe preexisting cardiovascular disease and a myocardial infarction *prior to his death* on May 1, 1976." (Emphasis added.) It is apparent from the foregoing that Maui Pine believes a showing that an

employee suffered from permanent partial disability prior to his second injury is sufficient to require apportionment. This is not the law.

The legislative history underpinning the *Crawford* decision necessitated the conclusion that the permanent partial disability not merely preexist the subsequent injury but preexist employment; HRS § 386-33 was enacted to alleviate discriminatory hiring practices which confronted handicapped persons seeking employment by limiting the liability of employers who hired handicapped persons to compensation for the subsequent injury alone. *Crawford,* 64 Haw. at 423, 643 P.2d at 53-54; Sen. Stand. Comm. Rep. No. 43, in 1937 Senate Journal 292, 293; House Stand. Comm. Rep. No. 276, in 1937 House Journal 1354, 1355.

Even assuming Medeiros' cardiovascular disease constituted a permanent partial disability and his death precipitated from a combination of the disease and his subsequent on-the-job injury, we are unconvinced the disease preexisted his employment. The record is devoid of evidence demonstrating that Medeiros suffered from cardiovascular disease prior to his employment with Maui Pine in 1950.

The post-mortem examination report indicated Medeiros' coronary arteries were markedly calcified and obstructed in several areas. In a letter to Maui Pine's counsel, Dr. Chesne, a cardiologist, concluded from the post-mortem report, that Medeiros had long-standing and extensive coronary artery disease. However, neither Dr. Chesne nor Dr. Sherman who testified at the hearing before the Board made a determination as to when Medeiros developed his cardiovascular condition. When asked to estimate "how long standing" Medeiros' cardiovascular disease was, Dr. Sherman answered "it's documented at least since '71, and — in that he had hypertension documented in '71. He probably had hypertension before that, but nobody documented it." (Tr. 85.)

Dr. Sherman also testified that Medeiros had complained of headaches; those complaints dated from 1963. Dr. Sherman stated that the headaches could have been a manifestation of hypertension; however, no blood pressure readings were taken to confirm that Medeiros' hypertension dated from 1963.

Thus, although there is evidence demonstrating Medeiros

suffered from long-standing cardiovascular disease, there is no evidence indicating the disease existed prior to his employment. Additionally, Medeiros' medical records reveal that Medeiros was diagnosed as not suffering from heart disease when he underwent physical exams in 1968, 1969, 1970, 1971, 1973, 1974,[1] and 1975, apparently in connection with his employment with Paschoal Grayline and later with Grayline-Maui.

Given the state of the record, we believe that no apportionment was required.[2]

Although the failure to produce evidence sufficient to establish Medeiros' cardiovascular disease preexisted his employment with Maui Pine may be the result of Maui Pine's misconception of the phrase "preexisting" in the context of the statute and its legislative history, our decision in *Brodie v. Hawaiian Automotive Retail Gasoline Dealers,* 65 Haw. ___, 655 P.2d 863 (1982), precludes us from remanding this case to afford Maui Pine an opportunity to adduce additional evidence indicating that Medeiros' cardiovascular disease preexisted his employment. *Brodie* teaches us that "[t]he fact that 'appellants may be taken by surprise' by the ruling of the appellate court" does not justify a remand where the appellate court's ruling on an issue of first impression does not constitute a sudden departure from an established rule of law. *Id.* at ___, 655 P.2d at 864.

Appellant in this case may arguably have been "taken by surprise" by the requirement that the permanent partial disability preexist employment established in *Crawford* since *Crawford* was decided after the proceedings before the board in the instant case had been completed. However, *Crawford* was based on legislative history and did not constitute a sudden

---

[1] While the 1974 examination report indicates Medeiros did not have heart disease, it did note that Medeiros had mild hypertension.

[2] In this case there was no evidence indicating that Medeiros' cardiovascular disease preexisted his employment with Maui Pine; thus, we need not and do not decide whether the employer or the SCF has the burden of proof on the question of whether a permanent partial disability preexisted employment.

departure from established law. Thus, *Brodie's* rationale is applicable, and we affirm the Board's decision denying apportionment.

## II.

Maui Pine's second point on appeal necessitates a determination as to the proper application of HRS § 386-93. Initially, we note that Hawaii allows attorney's fees only when authorized by statute, rule of court, agreement, stipulation, or Hawaiian precedent. *THC Financial Corp. v. LR&I Development One,* 65 Haw. 477, 653 P.2d 789 (1982); *Salvador v. Popaa,* 56 Haw. 111, 530 P.2d 7 (1974). Thus, where Grayline's claim for fees and costs is predicated solely on HRS § 386-93, the award of fees and costs is proper only if authorized by that statute.

HRS § 386-93 provides:

*Costs.* (a) If the director of labor and industrial relations, appellate board or any court finds that proceedings under this chapter have been brought, prosecuted, or defended without reasonable ground the whole costs of the proceedings may be assessed against the party who has so brought, prosecuted, or defended the proceedings.

(b) If an employer appeals a decision of the director or appellate board, the costs of the proceedings of the appellate board or the supreme court of the State, together with reasonable attorney's fees shall be assessed against the employer, if the employer loses; provided that if an employer or an insurance carrier, other than the employer who appealed, is held liable for compensation, the costs of the proceedings of the appellate board or the supreme court of the State together with reasonable attorney's fees shall be assessed against the party held liable for the compensation.

We note in passing that Grayline was not entitled to fees[3] and costs under subsection (a) where the Board found "[i]n

---

[3] Additionally, we note that HRS § 386-93(a) mentions only costs and not attorney's fees.

view of the difficult evidentiary questions presented by the relationship between employment activity and cardiovascular events, . . . that Maui Land & Pine's claim against Grayline was made in good faith," and where such finding was not clearly erroneous. HRS § 91-14.

The question of whether subsection (b) provides the necessary statutory authorization is the issue of major concern. Grayline, advocating the literal application of the statute, argues the statute clearly and unambiguously states "costs of proceedings . . . together with reasonable attorney's fees shall be assessed against the employer, if the employer loses" its appeal. Consequently, since Maui Pine instituted and lost its appeal, it is liable for the costs and attorney's fees of all the parties involved in the proceedings. Maui Pine counters, stating although the statutory language is unambiguous, a literal application would produce an absurd and unjust result, inconsistent with the purpose and policy of the workmen's compensation law.

In construing statutes, a court's primary objective is to ascertain and give effect to the intention of the legislature as gleaned primarily from the language contained in the statute itself. *In re Hawaiian Telephone Co.,* 61 Haw. 572, 577, 608 P.2d 383, 387 (1980). Accordingly, "[i]t is well settled that this court is bound by the plain, clear and unambiguous language of a statute unless the literal construction would produce an absurd and unjust result, and would be clearly inconsistent with the purposes and policies of the statutes." *Sherman v. Sawyer,* 63 Haw. 55, 59, 621 P.2d 346, 349 (1980). *Chun v. Employees' Retirement System,* 61 Haw. 596, 600-01, 607 P.2d 415, (1980); *In re Spencer,* 60 Haw. 497, 499, 591 P.2d 611, 613 (1974). The foregoing does not preclude an examination of sources other than the language of the statute itself even when the language appears clear upon perfunctory review. *Crawford,* 64 Haw. at 420, 643 P.2d at 52. Were this not the case, a court may be unable to adequately discern the underlying policy which the legislature seeks to promulgate and, thus, would be unable to determine if a literal construction would produce an absurd or unjust result, inconsistent with the policies of the statute.

Guided by the above precepts, we embark on our analysis of subsection (b) of the statute in question. Subsection (b) as originally enacted imposed liability for fees and costs on an employer who appealed a decision of the director or the Board and lost. The legislature subsequently enacted a proviso to the original provision which imposed liability for fees and costs on a non-appealing employer or insurance carrier held liable for the compensation due the claimant.

Given the factual situation in the instant case, an award of fees and costs could only be justified under the original provision of subsection (b). An examination of the legislative history of the original provision failed to reveal any legislative intent to limit a losing employer's liability for fees and costs to that incurred by the claimant. We are cognizant that the two basic goals of workmen's compensation statutes are to "(a) restore the injured worker, to the greatest possible extent, physiologically and as a productive member of society; and (b) to compensate him or his family adequately for the losses consequent upon his personal injury." *Crawford,* 64 Haw. at 419, 643 P.2d at 51, quoting S. Riesenfeld, *Study of Worker's Compensation Law in Hawaii,* Legislative Reference Bureau, Report No. 1 (1963), at 28. However, we do not believe an interpretation which imposes liability for fees and costs incurred by Grayline upon Maui Pine amounts to an absurd and unjust result, inconsistent with the aforementioned policies of the statute.

Nevertheless, Maui Pine contends the legislative history of the proviso when read in light of *Crawford* necessitates a construction which limits Maui Pine's liability to fees and costs incurred by the claimant. The legislative history[4] of the proviso is replete with statements indicating the impetus for enacting the proviso was to relieve a claimant of the burden of paying costs and fees where an employer appeals and another employer or insurance carrier is held liable for the compensation since the orginal provision did not address such situation.

---

[4] Hse. Stand. Comm. Rpt. No. 357, in 1967 House Journal, at 608; Sen. Stand. Comm. Rpt. No. 668, in 1967 Senate Journal, at 1154.

Maui Pine contends that where the legislative history, which *Crawford* compels us to consider, clearly indicates the purpose of the statutory provision is to provide relief for the claimant, this court should so limit the seemingly broad language of the statute.

We are unconvinced by Maui Pine's argument. Initially, we note that we are called upon to interpret the original provision and not the later added proviso of subsection (b). Additionally, we do not read *Crawford* as advocating the exaltation of legislative history over statutory language as the source for divining legislative intent where the intent as gleaned from the two sources is not contradictory.

The language of the statute comprehends imposing liability for the fees and costs incurred by a non-appealing employer upon an appealing employer who loses. The imposition of such liability does not contravene the purpose of the statute, thus, *Crawford* is inapposite.[5] Accordingly, we affirm the board's decision awarding reasonable attorney's fees and costs to Grayline-Maui.

*Howard A. Matsuura (Char, Hamilton, Taylor & Thom,* of counsel) for Appellant Maui Land and Pineapple Company.

*Grant K. Kidani* and *Amy R. Miyasaki (Kidani, Oshima & Wong,* of counsel) for Appellees Grayline-Maui and Hawaiian Insurance and Guaranty Company.

---

[5] In *Crawford,* we noted that it was possible to interpret HRS § 386-33 literally so as not to encompass death benefit cases; however, we refused to adopt a literal construction where it was clear from the legislative history of the provision that such construction would undermine the purpose of the statutory provision.