ANN MARIE BARCENA, formerly known as Ann Marie Lewis, Plaintiff-Appellant, *v.* THE HAWAIIAN INSURANCE & GUARANTY COMPANY, LIMITED, and DEPARTMENT OF SOCIAL SERVICES AND HOUSING, STATE OF HAWAII, Defendants-Appellees

(CIVIL NO. 7548)

NO. 9089

ANN MARIE BARCENA, formerly known as Ann Marie Lewis, Plaintiff-Appellant, *v.* THE HAWAIIAN INSURANCE & GUARANTY COMPANY, LIMITED, and DEPARTMENT OF SOCIAL SERVICES AND HOUSING, STATE OF HAWAII, Defendants-Appellees

(CIVIL NO. 7548)

NO. 9005

MARCH 16, 1984

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

The dispositive question in these consolidated appeals from the Circuit Court of the Third Circuit is whether Ann Marie Barcena, formerly Ann Marie Lewis, who was insured under a "no-fault policy" that apparently provided no payments to defray expenses incurred for physical therapy because she was a recipient of public assistance when the auto accident causing her harm occurred, was nonetheless entitled to the "no-fault benefits" designed to cover such expenditures when she became ineligible for public assistance thereafter.

While a literal application of a discrete provision of the No-Fault Insurance Law, Hawaii Revised Statutes (HRS) Chapter 294, would allow the insurer to reject her claim of benefits with impun-

ity, we do not believe the legislature contemplated a person in her predicament would be without "no-fault benefits." Reading the provision consistently with the statute's purpose and policy, we ··conclude the insurer was obligated to reimburse Mrs. Barcena for the expenses of physical therapy during the time she could not qualify for public assistance. We therefore vacate the summary judgment awarded the Hawaiian Insurance and Guaranty Company, Ltd. (HIG) and the order denying attorney's fees and costs, affirm the summary judgment in favor of the Department of Social Services and Housing, State of Hawaii (DSSH), and remand the case for the determination of the amount of benefits she should receive and her entitlement to an attorney's fee and costs.

I.

Ann Marie Lewis, then a recipient of public assistance under the Aid to Families with Dependent Children (AFDC) program administered by DSSH, sustained an injury in a vehicular collision on March 6, 1980. Although she was insured under a "no-fault policy" as mandated by HRS § 294-8,[1] the policy issued by HIG without cost to her, when read in conjunction with HRS § 294-24(b)(2), did not provide payments to cover her rehabilitation expenses.[2] Under the legislative scheme of reparations for injury re-

---

[1] HRS § 294-8, in relevant part, provides:

No person shall operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured at all times under a no-fault policy. Every owner of a motor vehicle used or operated at any time upon any public street, road, or highway of this State shall obtain a no-fault policy upon such vehicle which provides the coverage required by this chapter and shall maintain the no-fault policy at all times for the entire motor vehicle registration period.

But in the case of a public assistance recipient, no policy is actually issued to the insured. A certification by DSSH is issued, and this certificate is deemed a policy. See HRS § 294-22(b)(2).

[2] HRS § 294-24(b)(2) provides that for "the licensed public assistance driver . . . no premium shall be assessed for the basic no-fault, the mandatory public liability or the mandatory property damage policies." Thus, Mrs. Barcena was insured at no cost under a "no-fault policy." But "no-fault benefits" as defined by HRS § 294-2(10)

sulting from motor vehicle accidents, those expenses were met through the public assistance program. Hence, Ms. Lewis had no reason to assert a claim against HIG as long as she remained an AFDC beneficiary.

In January of 1981, Ms. Lewis, now Mrs. Barcena, informed DSSH that the AFDC payments to her should be discontinued since her husband's income disqualified her for assistance. But after she and her husband were separated in November of 1981, she again sought and received public aid. In the interim, however, she continued to incur expenses related to the injury. And though she sought "no-fault benefits" from HIG or assistance from DSSH to cover the cost of physical therapy during the time she received no AFDC payments, neither responded affirmatively to her request. HIG disavowed responsibility for payment of "no-fault benefits," since "the term, when applied to a no-fault policy issued at no cost under the provisions of ... [HRS §] 294-24(b)(2) ... [did] not include benefits under subparagraphs (A), (B), and (C) for any person receiving public assistance benefits." *See* note 2 *supra*. DSSH rejected the plea for aid on grounds that she was ineligible for AFDC payments when the therapy was administered.

---

does not include expenses incurred for medical and related services by persons receiving public assistance. The subsection reads in relevant part:

(10) "No-fault benefits" with respect to any accidental harm shall be subject to an aggregate limit of $15,000 per person or his survivor and means:

(A) All appropriate and reasonable expenses necessarily incurred for medical, hospital, surgical, professional nursing, dental, optometric, ambulance, prosthetic services, products and accommodations furnished, x-ray and may include any non-medical remedial care and treatment rendered in accordance with the teachings, faith or belief of any group which depends for healing upon spiritual means through prayer;

(B) All appropriate and reasonable expenses necessarily incurred for psychiatric, physical, and occupational therapy and rehabilitation;

(C) Monthly earnings loss measured by an amount equal to the lesser of:

(i) $800 per month, or

(ii) The monthly earnings for the period during which the accidental harm results in the inability to engage in available and appropriate gainful activity.

. . . .

provided that the term, when applied to a no-fault policy issued at no cost under the provisions of section 294-24(b)(2), shall not include benefits under subparagraphs (A), (B), and (C) for any person receiving public assistance benefits.

The negative responses led Mrs. Barcena to seek a judicial remedy, and she filed a two-count complaint in the circuit court. In the first, she prayed that the court decree performance of HIG's obligation under the policy to furnish "no-fault benefits" and for damages. In the second, she sought an order directing the payment of AFDC benefits by DSSH, as well as damages. She further prayed that attorneys' fees and costs be assessed against the insurer and the State agency.

Mrs. Barcena's application for judicial relief suffered a fate similar to the earlier requests made of the defendants; summary judgments were awarded to HIG and DSSH. Her subsequent motion seeking the payment of attorneys' fees and costs pursuant to HRS § 294-30(a)[3] was also disallowed. Appeals to this court from the summary judgments and from the disallowance of fees and costs followed.[4]

II.

A.

"The purpose of . . . [HRS Chapter 294] is to create a system of reparations for accidental harm and loss arising from motor vehicle accidents, to compensate those damages without regard to fault, and to limit tort liability for these accidents." HRS § 294-1. "If the accident causing accidental harm occurs in this State, every person, insured under this chapter, and his survivors, suffering loss from accidental harm arising out of the operation, maintenance or use of

---

[3] HRS § 294-30, in pertinent part, reads:

A person making a claim for no-fault benefits may be allowed an award of a reasonable sum for attorney's fee, based upon actual time expended, which shall be treated separately from the claim and be paid directly by the insurer to the attorney, and all reasonable costs of suit in an action brought against an insurer who denies all or part of a claim for benefits under the policy unless the court or the commissioner, upon judicial or administrative proceedings, respectively, determines that the claim was fraudulent, excessive, or frivolous.

[4] The appeals have been consolidated for hearing and disposition.

a motor vehicle has a right to no-fault benefits." HRS § 294-3.

The statutory system of reparations embodied in the No-Fault Insurance Law is bottomed on the compulsory coverage of all motor vehicles and operators under no-fault insurance policies and the partial abolition of tort liability. *See* note 1 *supra* and HRS § 294-6.[5] Now, one to whom harm befalls from an auto accident, save in certain instances not relevant here, cannot seek recompense from a negligent perpetrator of harm; he must look instead to sources designated in the chapter. If the injured person has purchased the "no-fault policy" required of all motor vehicle owners and operators, the insurer is obliged to compensate him for damages to the extent they fall within "no-fault benefits" as defined by HRS § 294-2(10). If the insured accident victim is a public assistance recipient for whom the mandatory insurance coverage has been provided under the joint underwriting plan established by HRS § 294-22,[6] the "no-fault benefits" the insurer would be responsible for would not include payments for medical and rehabili-

---

[5] HRS § 294-6(a) reads:

Tort liability of the owner, operator, or user of an insured motor vehicle, or the operator or user of an uninsured motor vehicle who operates or uses such vehicle without reason to believe it to be an uninsured motor vehicle, with respect to accidental harm arising from motor vehicle accidents occurring in this State, is abolished, except as to the following persons or their personal representatives, or legal guardians, and in the following circumstances:
· (1) Death occurs to such person in such a motor vehicle accident; or injury occurs to such person which consists, in whole or in part, in a significant permanent loss of use of a part or function of the body; or injury occurs to such person which consists of a permanent and serious disfigurement which results in subjection of the injured person to mental or emotional suffering;
(2) Injury occurs to such person in a motor vehicle accident in which the amount paid or accrued exceeds the medical-rehabilitative limit established in section 294-10(b) for expenses provided in section 294-2(10)(A) and (B);
(3) Injury occurs to such person in such an accident and as a result of such injury the aggregate limit of ,no-fault benefits outlined in section 294-2(10) payable to such person are exhausted.

This section shall apply whether or not the injured person is entitled to receive no-fault benefits.

[6] The expenses of the joint underwriting plan are primarily borne by members of the insured motoring public, and the premiums for no-fault policies purchased by them reflect such costs. *See* HRS §§ 294-20 to 294-24.

tation expenses; in his case, the liability for such services is assumed by the government. *See* note 2 *supra.*

B.

The accident victim here concededly suffered loss from accidental harm arising from the operation of a motor vehicle, and she was insured under a "no-fault policy." Yet she was rebuffed when she sought reparations from her insurer or public aid to defray expenses incurred for therapy.

HIG rationalizes its refusal to honor her claim on the language of HRS § 294-2(10) defining "no-fault benefits." To be sure, "the term, when applied to a no-fault policy issued at no cost under the provisions of section 294-24(b)(2) . . . [does] not include benefits . . . [for expenses incurred for occupational therapy and rehabilitation by] any person receiving public assistance benefits." *See* note 2 *supra.* On superficial examination, the foregoing proviso to HRS § 294-2(10) appears to preclude the payment of the claimed "no-fault benefits." Still, the unavailability of benefits for Mrs. Barcena cannot be reconciled with Chapter 294's declared purpose to create a no-fault system of reparations, its limitation of tort liability, and its establishment of right to "no-fault benefits" for loss from accidental harm arising out of the operation of a motor vehicle. *See* HRS §§ 294-1 and 294-3.

Though it can be said that the proviso to HRS § 294-2(10) manifests a legislative design supportive of HIG's position, the language may also be read more restrictively as Mrs. Barcena suggests — "no-fault benefits" are withholdable only while a person is a recipient of public aid. "There are times when uncertain words are to be wrought into consistency and unity with a legislative policy which is itself a source of law. . . ." *Van Beeck v. Sabine Towing Co.,* 300 U.S. 342, 351 (1937). *Cf. Dependents of Crawford v. Financial Plaza Contractors,* 64 Haw. 415, 421, 643 P.2d 48, 52 (1982); *Montalvo v. Chang,* 64 Haw. 345, 356, 641 P.2d 1321, 1329 (1982) (the policy as well as the letter of the law is a guide to decision). For the power to decide what the policy of the law shall be resides with the legislature; "and if it has intimated its will, . . . that will should be recognized and obeyed." *Johnson v. United States,* 163 F. 30, 32

(1908). *Cf. In re Hawaiian Telephone Co.*, 61 Haw. 572, 577, 608 P.2d 383, 387 (1980); *Keller v. Thompson*, 56 Haw. 183, 189, 532 P.2d 664, 669 (1975) (the primary duty of courts in statutory construction is to ascertain and give effect to the intention of the legislature).

The legislative will is that "every [insured] person . . . suffering loss from accidental harm arising out of the operation . . . of a motor vehicle has a right to no-fault benefits." HRS § 294-3. Hence, the proviso in question when "wrought into consistency and unity" with this intent can be applied to deny Mrs. Barcena "no-fault benefits" to cover the cost of her therapy only while she remained a recipient of public aid and the liability for her rehabilitation was assumed by the government. During the time she was ineligible for government assistance, it was incumbent upon HIG to furnish the benefits prescribed by the No-Fault Insurance Law. Otherwise, the promise of benefits in lieu of the right she possessed to seek reparations from a negligent perpetrator of harm would not be fulfilled.

### III.

Having held HIG accountable and seeing no reason to promote a double recovery of rehabilitation expenses, we find it unnecessary to subject our public assistance laws to scrutiny.

The award of summary judgment to HIG and the order denying attorney's fees and costs are set aside, the award of summary judgment to DSSH is affirmed, and the case is remanded to the circuit court for proceedings consistent with this opinion.

*Greg K. Nakamura (William J. Rosdil*, A Law Corporation, of counsel) for appellant.

*Walter Davis (Davis, Playdon, Reid & Richards*, of counsel) for Appellee Hawaiian Insurance & Guaranty Co.

*Steven K. Chang*, Deputy Attorney General, for Appellee Department of Social Services & Housing, State of Hawaii.