YASH RANA, Plaintiff-Appellant, *v.* BISHOP INSURANCE OF HAWAII, INC., a Hawaii corporation, Defendant-Appellee

NO. 10097

(CIVIL NO. 78040)

SEPTEMBER 4, 1985

BURNS, C. J., HEEN AND TANAKA, JJ.

2

OPINION OF THE COURT BY TANAKA, J.

Plaintiff Yash Rana (Rana) appeals from the summary judgment in favor of Bishop Insurance of Hawaii, Inc. (Bishop), which dismissed Rana's complaint seeking payments of no-fault earnings loss benefits based on "stacking" no-fault insurance coverage on the seven automobiles owned by him and insured by Bishop. Rana also appeals from the order denying his motion for allowance of attorney's fees and costs.

The issues on appeal and our answers are:

1. Whether the Hawaii no-fault law, Hawaii Revised Statutes (HRS) Chapter 294 (1976, as amended) (No-Fault Law), precludes "stacking" of no-fault basic insurance coverages where the injured named insured has a single insurance policy covering seven vehicles. Yes.

2. Whether upon the filing of a valid notice of appeal on the merits, the trial court lost its jurisdiction to consider the award of attorney's fees and costs. Yes.

We therefore affirm the summary judgment, but reverse the order

denying attorney's fees and costs.

The facts are not in dispute. In 1982, Bishop issued to Rana a "Business Auto Policy" insuring seven automobiles owned and utilized by Rana in his taxicab business.[1] On December 6, 1982, Rana was injured in an automobile collision[2] while operating one of those automobiles. He sought payments of no-fault earnings loss benefits of $2,000 per month, his actual monthly loss, on the theory that the "stacking" of no-fault basic coverage of $800 earnings loss benefits per vehicle under the policy was permitted and that the "stacked" aggregate limit would be seven vehicles times $15,000 or $105,000. Bishop, however, paid him the monthly statutory limit of $800 for his monthly earnings loss and terminated the payments at $15,000.

On June 13, 1983, Rana sued Bishop seeking (1) a declaratory judgment that he was "entitled to 'stack' the coverages and limits of all seven automobiles under the one policy," (2) a money judgment for his actual earnings loss, (3) punitive damages, and (4) attorney's fees, interest, and costs. Thereafter, Rana moved for partial summary judgment on the issue of Bishop's liability under the policy and Bishop moved for summary judgment. After a joint hearing on the motions, Rana moved for allowance of attorney's fees and costs.

On July 2, 1984, the circuit court denied Rana's motion and granted Bishop's motion for summary judgment. Rana filed a timely notice of appeal on July 31, 1984. On August 12, 1984, the court denied Rana's motion for attorney's fees, and Rana filed an amended notice of appeal on August 20, 1984.

I.

In their respective briefs, both Rana and Bishop refer to the follow-

---

[1]The record discloses that for the Business Auto Policy the total premium was $3,297, of which $548 was for "Personal Injury Protection (P.I.P.) (or equivalent no-fault coverage)." The premium for the no-fault coverage was $164 for one car, $114 for another, and $119 for the third. The record does not reveal what the no-fault premium was for each of the other four cars. There is no evidence in the record that the premium for no-fault coverage for one car included a charge to cover the cost of stacking its coverage for no-fault benefits payable for accidental harm involving any of the other six cars.

[2]It is not clear from the record whether Rana was involved in a one-car or multi-car accident.

ing provisions of the No-Fault Law, which as of the date of Rana's accident on December 6, 1982, read in pertinent part as follows:

§ 294-2   Definitions.   As used in this chapter:

\*   \*   \*

(10) "No-fault benefits" with respect to any accidental harm shall be subject to an aggregate limit of $15,000 per person or his survivor and means:

\*   \*   \*

(C) Monthly earnings loss measured by an amount equal to the lesser of:

(i) $800 per month[.]

\*   \*   \*

§ 294-3   Right to no-fault benefits.   (a) If the accident causing accidental harm occurs in this State, every person, insured under this chapter, and his survivors, suffering loss from accidental harm arising out of the operation, maintenance or use of a motor vehicle has a right to no-fault benefits.

\*   \*   \*

(c) "Maximum limit". The total no-fault benefits payable per person or on his death to his survivor on account of accidental harm sustained by him in any one motor vehicle accident shall be $15,000, regardless of the number of motor vehicles involved or policies applicable.

\*   \*   \*

§ 294-5   Payment from which insurer.

\*   \*   \*

(c) No payment of no-fault benefits may be made to the occupants of a motor vehicle other than the insured motor vehicle or to the operator or user of a motor vehicle engaging in criminal conduct which causes any loss.

(d) The no-fault insurance applicable on a primary basis to

accidental harm to which this chapter applies is the insurance on the vehicle occupied by the injured person at the time of the accident, or, if the injured person is a pedestrian (including a bicyclist), the insurance on the vehicle which caused accidental harm to such pedestrian (including a bicyclist).

If there is no such insurance on such vehicle, any other no-fault insurance applicable to the injured person shall apply.

No person shall recover no-fault benefits from more than one insurer for accidental harm as a result of the same accident.

§ 294-11 Required optional additional insurance. (a) In addition to the no-fault coverages described in section 294-10 every insurer issuing a no-fault policy shall make available to the insured the following optional insurance under the following conditions:

\* \* \*

(3) Additional coverages and benefits with respect to any injury, death, or any other loss from operation of a motor vehicle. An insurer may provide for aggregate limits with respect to such additional coverage so long as the basic liability coverages provided are not less than those required by section 294-10(a)(1) and (2).

\* \* \*

Rana contends that the above-quoted sections of the No-Fault Law do not prohibit, but permit, the stacking[3] of no-fault policies or coverages. Bishop, on the other hand, argues to the contrary. Based on the

---

[3] "Stacking" may be defined as follows:

"Stacking," where permitted, makes more than one policy fully available to the injured party without proration between the companies held liable. The word "stacking," as used in the argot of the insurance industry implies and is intended to be used when one policy's limit is "stacked" on top of another and possibly a third is "stacked" on top of the second. The claim is not paid by slicing through the stack like a piece of wedding cake but is paid by first using one layer, then another and so on.

Comment, *When Enough Isn't Enough: Supplementing Uninsured Motorist Coverage in Pennsylvania,* 54 Temp. L.Q. 281, 282-83, n.5 (1981) (quoting P. Pretzel, Uninsured Motorists 87-88 (1972)).

6

plain and unambiguous language in HRS §§ 294-2(10) and -3(c), buttressed by the statute's legislative history, we construe the No-Fault Law to preclude stacking.

A.

In construing a statute, the court's "objective is to ascertain and give effect to the intention of the legislature," *Survivors of Medeiros v. Maui Land & Pineapple Co.,* 66 Haw. 290, 297, 660 P.2d 1316, 1321 (1983), obtained primarily from the language of the statute itself. *Treloar v. Swinerton & Walberg Co.,* 65 Haw. 415, 653 P.2d 420 (1982). Thus, "where the language of the law in question is plain and unambiguous, . . . our duty is only to give effect to the law according to its plain and obvious meaning." *In re Hawaiian Telephone Co.,* 61 Haw. 572, 577-78, 608 P.2d 383, 387 (1980). *See also Puchert v. Agsalud,* 67 Haw. 25, 677 P.2d 449 (1984). However, where the statutory language "is ambiguous or of doubtful meaning, . . . judicial construction and interpretation are warranted[.]" *In re Hawaiian Telephone Co.,* 61 Haw. at 578, 608 P.2d at 387. *See also State v. Ui,* 66 Haw. 366, 663 P.2d 630 (1983). And courts may resort to legislative history in construing a statute. *Life of the Land, Inc. v. City Council of the City & County of Honolulu,* 61 Haw. 390, 447, 606 P.2d 866, 899 (1980); *Educators Ventures, Inc. v. Bundy,* 3 Haw. App. 435, 652 P.2d 637 (1982).

We apply the foregoing guidelines in construing the No-Fault Law.

1.

We find the language in HRS §§ 294-2(10) and -3(c) to be plain and unambiguous. HRS §§ 294-2(10) states that no-fault benefits shall be subject to "an aggregate limit of $15,000 per person or his survivor," and HRS § 294-3(c), titled "maximum limit," provides that the *"total* no-

---

"Intra-policy stacking involves *a single policy*" and "is achieved by permitting the insured to aggregate the limit of coverage by multiplying the stated limit of liability by the number of vehicles covered under [the] policy." Comment, *Intra-Policy Stacking of Uninsured Motorist and Medical Payments Coverages: To Be or Not To Be,* 22 S.D.L. Rev. 349, 350 (1977) (emphasis in original). "[I]nter-policy stacking involves *more than one policy* and allows insurance coverage to be aggregated or 'stacked' to fully compensate the insured for damages sustained." *Id.* (emphasis in original).

fault benefits *payable per person*" in one accident shall be $15,000, "regardless of the *number* of *motor vehicles involved* or *policies applicable*." (Emphasis added.) In our view, the language of those sections indicates a clear legislative intent to prohibit stacking of no-fault basic coverages.

However, the case of *Yamaguchi v. State Farm Mutual Automobile Insurance Co.,* 706 F.2d 940 (9th Cir. 1983), which construed the No-Fault Law to permit stacking, *see* Part I-B *infra,* indicates that the statutory language may be of doubtful meaning. We will therefore resort to legislative history to ascertain the intention of the legislature in construing the No-Fault Law.

2.

In enacting the No-Fault Law in 1973,[4] the legislature had two primary objectives in mind: (1) insurance reform in order to (a) expedite the settling of all claims, (b) create a system of reparations for injuries and loss arising from motor vehicle accidents, (c) compensate these damages without regard to fault, and (d) modify tort liability for these accidents; and (2) to establish a system of reasonable cost of motor vehicle insurance with a view to reducing such costs.

Hse. Joint Stand. Comm. Rep. No. 187, in 1973 House Journal, at 836. The legislators were of the belief

that a basic, comprehensive, equitable, and reasonably priced auto insurance policy must satisfy each of the following criteria:

(1) Provide for a speedy, adequate and equitable reparation for those injured or otherwise victimized;

(2) Provide for the stabilization and reduction of motor vehicle liability insurance premium rates;

(3) Provide for insurance coverage for all who required it, at a cost within the reach of every licensed driver;

(4) Provide for a compulsory insurance system;

(5) Provide for adequate regulatory control.

Hse. Conf. Comm. Rep. No. 13, in 1973 House Journal, at 1219; Sen.

---

[4]Act 203, 1973 Haw. Sess. Laws 381.

Conf. Comm. Rep. No. 4, in 1973 Senate Journal, at 635-36.

From such legislative objectives and beliefs emerged the No-Fault Law, its statutory scheme being based "on the compulsory coverage of all motor vehicles and operators under no-fault insurance policies and the partial abolition of tort liability." *Barcena v. Hawaiian Insurance & Guaranty Co., Ltd.,* 67 Haw. 97, 102, 678 P.2d 1082, 1086 (1984).

To provide for "adequate and equitable reparation for those injured" and compulsory insurance coverage "at a cost within the reach of every licensed driver," the legislature had to strike a balance between those objectives. It did so by (1) defining the basic no-fault benefits and subjecting them "to an aggregate limit of $15,000 per person or his survivor[,]" HRS § 294-2(10); (2) expressly setting the "maximum limit" regarding no-fault benefits payable in HRS § 294-3(c);[5] and (3) requiring the insurer to make available to the insured optional additional insurance over and above the compulsory basic no-fault coverage. HRS § 294-11(a).

The legislative history of the No-Fault Law evinces a legislative concern to reduce and stabilize automobile insurance costs prevailing prior to its enactment and to provide and maintain reasonable premium rates for no-fault basic coverage. We discern therefrom a legislative intent to prohibit stacking which indubitably will lead to higher premiums for no-fault basic coverage. We therefore conclude that HRS §§ 294-2(10) and -3(c) precludes the stacking of no-fault basic insurance

---

[5]When initially enacted in 1973, HRS § 294-3(c) read:

"Maximum limit". The aggregate limit payable, regardless of the number of motor vehicles involved or insured, to each person or to his survivors for no-fault benefits shall not exceed $15,000.

Act 203, § 1, 1973 Haw. Sess. Laws 381, 383-84.

In 1974, HRS § 294-3(c) was amended to read as follows:

"Maximum limit". The total no-fault benefits payable per person per motor vehicle accident, regardless of the number of motor vehicles involved or insured or the number of policies applicable on account of accidental harm sustained by each person, or to his survivors, shall be $15,000.

Act 168, § 1, 1974 Haw. Sess. Laws 317, 320. The legislative history of Act 168 indicates that regarding "Section 294-3(b)[,] [t]he maximum limit of no-fault benefits payable has been clarified so as to avoid the problem of *stacking*." Sen. Stand. Comm. Rep. No. 467-74, in 1974 Senate Journal, at 940 (emphasis added). However, the reference to "Section 294-3(b)" was a typographical error and should have been "Section 294-3(c)" which refers to "Maximum limit."

In 1975, HRS § 294-3(c) was amended to its present wording. *See* Act 113, § 2, 1975 Haw. Sess. Laws 197, 198.

policies and coverages. To permit stacking would be contrary to an objective the legislature sought to achieve.

B.

Rana asserts that we have already determined that "'[s]tacking' of no-fault policies is permitted under the No-Fault Act." *In re Claim of Maldonado*, 5 Haw. App. 185, 192, 683 P.2d 394, 399-400, *rev'd*, 67 Haw. 347, 687 P.2d 1 (1984). We cited *Yamaguchi v. State Farm Mutual Automobile Insurance Co., supra*, and *Mizoguchi v. State Farm Mutual Automobile Insurance Co.*, 66 Haw. 373, 663 P.2d 1071 (1983), in support of the foregoing statement made in *Maldonado*.

Unfortunately, our use of the term "stacking" in *Maldonado* was loose and indiscriminate. There, the construction of HRS § 294-5(b) was involved, and we and the parties involved in the appeal characterized the issue as being whether the "stacking" of no-fault and workers' compensation insurance policies was permissible. We looked at the results achieved in *Yamaguchi* and *Mizoguchi*, which permitted the "stacking" of optional additional no-fault policy or coverage upon a no-fault basic policy or coverage, and improvidently made a general statement that our No-Fault Law permitted "stacking" of no-fault policies in *Maldonado*. Since stacking of two or more no-fault basic policies or coverages was not involved in *Maldonado*, that statement is *obiter dictum* and not binding.

In *Yamaguchi*, the decedent was fatally injured while a passenger in a station wagon covered by a no-fault basic insurance policy issued by National Union Fire Insurance Co. (National Union). The decedent himself owned two automobiles covered by two separate no-fault insurance policies issued by State Farm Mutual Automobile Insurance Co. (State Farm). Each of the State Farm policies was endorsed to increase the aggregate limit from $15,000 to $50,000. The issue in *Yamaguchi* was whether the two State Farm policies could be stacked on the National Union $15,000 basic policy. Holding that the limitation in HRS § 294-5(c) applied to the decedent in his capacity as an "occupant" only, and not as an "owner" or "insured," and that HRS § 294-5(d) banned "benefit stacking" or double recovery only, the court of appeals con-

cluded that the No-Fault Law did not prevent "policy stacking."[6] *Id.* at 948-49.

"[T]he [state] courts are the final arbiters of the State's own law[.]" *Wardius v. Oregon,* 412 U.S. 470, 477, 93 S. Ct. 2208, 2213, 37 L.Ed.2d 82, 89 (1972). Thus, "we are not bound by the federal . . . court's interpretation of our statutes." *Lewis v. Midway Lumber, Inc.,* 114 Ariz. 426, 430, 561 P.2d 750, 754 (1977). *See also Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 384 N.E.2d 353 (1978). We disagree with the *Yamaguchi* court.[7]

We view HRS § 294-5(a), (c), and (d) to be subsections dealing with the question of which no-fault insurance applies in case of accidental harm arising in a motor vehicle accident. *See* 8D J.A. Appleman, *Insurance Law and Practice* § 5191 (1981) (hereinafter "Appleman"). Subsection (d)'s coverage follows the car rather than the contract. *See* 1 I.E. Schermer, *Automobile Liability Insurance* § 13.01 (2 ed. 1985). HRS § 294-5(d) was added to the No-Fault Law in 1974, Act 168, § 1, 1974 Haw. Sess. Laws 317, 321, to provide that primary no-fault coverage is "the policy covering the auto in which the claimant was riding. Specifically: the insurance follows the vehicle insured primarily, and the person only secondarily." Hse. Conf. Comm. Rep. No. 28, in 1974 House Journal, at 868; Sen. Conf. Comm. Rep. No. 28-74, in 1974 Senate Journal, at 781. As indicated above, we consider HRS §§ 294-2(10) and -3(c) as the pertinent provisions precluding stacking of no-fault basic policies and coverages.

Rana's reliance on *Mizoguchi* is misplaced. In *Mizoguchi,* the decedent's car was covered by a State Farm no-fault policy which included an additional coverage endorsement raising the aggregate limit of no-fault benefits from $15,000 to $50,000. Contrary to State Farm's conten-

---

[6]However, based on the provisions in each of the State Farm policies, the court of appeals held that State Farm's liability was $35,000, "the difference between the $50,000 aggregate limit of each policy and the National Union [primary] policy aggregate limit of $15,000." *Yamaguchi v. State Farm Mutual Automobile Insurance Co.,* 706 F.2d 940, 956 (9th Cir. 1983).

[7]In *Mizoguchi v. State Farm Mutual Automobile Insurance Co.,* 66 Haw. 373, 378 n.4, 663 P.2d 1071, 1075 n.4 (1983), our supreme court "reserve[d] opinion on the specific issue raised in *Yamaguchi*[.]" At that time *Yamaguchi v. State Farm Mutual Automobile Insurance Co,* 515 F. Supp. 186 (D. Hawaii 1980), had been decided, but the court of appeals' decision, *Yamaguchi,* 706 F.2d 940 (9th Cir. 1983), had not been issued.

tion, the supreme court held that in case of death, work loss benefits are payable and eligible beneficiaries are entitled to no-fault benefits "up to the increased aggregate limit of any *additional coverage*." *Id.* at 378, 663 P.2d at 1075 (emphasis added). *Mizoguchi* involved one vehicle and one policy with optional additional coverage permitted by HRS § 294-11(a)(3). Nonetheless, Rana argues that he had "purchased additional coverage" like in *Mizoguchi.* However, Rana's purchase of "additional coverage" was for compulsory no-fault basic coverage for each of his other six vehicles as required by HRS § 294-8(a)(1)[8] rather than optional additional coverages under HRS § 294-11(a)(3).

This is a case of first impression before a Hawaii appellate court. Not being bound by *Yamaguchi,* we construe the No-Fault Law as prohibiting the stacking of no-fault basic insurance policies and coverages.

C.

Citing the Hawaii cases which permit the stacking of uninsured motorist insurance policies and coverages, *e.g. Allstate Insurance Co. v. Morgan,* 59 Haw. 44, 575 P.2d 477 (1978); *Walton v. State Farm Mutual Automobile Insurance Co.,* 55 Haw. 326, 518 P.2d 1399 (1974); *Yamamoto v. Premier Insurance Co.,* 4 Haw. App. 429, 668 P.2d 42 (1983), Rana argues that there is no "reasonable basis" for distinguishing between the stacking of uninsured motorist coverages and of no-fault coverages. We do not agree.

As the federal district court did in *Kirsch v. Nationwide Insurance Co.,* 532 F. Supp. 766 (W.D. Pa. 1982), we find that the analogy of the No-Fault Law to the uninsured motorist statute[9] is faulty. In *Kirsch,* the

---

[8]HRS § 294-8(a)(1) provides:

Conditions of operation and registration. (a)(1) No person shall operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured at all times under a no-fault policy. Every owner of a motor vehicle used or operated at any time upon any public street, road, or highway of this State shall obtain a no-fault policy upon such vehicle which provides the coverage required by this chapter and shall maintain the no-fault policy at all times for the entire motor vehicle registration period.

[9]HRS § 431-448 (1976) provides:

Automobile liability; coverage for damage by uninsured motor vehicle. No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of

court in construing Pennsylvania's no-fault act considered the same argument presented to us by Rana. Its response was:

> This argument fails, however, because the analogy to the Uninsured Motorist Act is faulty. The Uninsured Motorist Act was enacted specifically to provide coverage to innocent victims of negligent acts of uninsured third parties. The Act was not intended to limit causes of action against tortfeasors, but to assure recovery where tortfeasors are financially unable to pay any judgment awarded. The Act does not place any statutory maximum on the amount of coverage any individual insured can obtain, only the minimum amount of coverage each insurance policy must provide.
>
> The No-Fault Act, on the other hand, has an entirely different purpose. The No-Fault Act provides for a specific amount of possible recovery to be awarded to victims of motor vehicle accidents, *regardless of fault.* This arrangement allows for prompt compensation to victims. However, once the statutory ceilings are exceeded, the negligent party is still liable for any further damages caused by his actions. The cause of action against the faulty driver is not limited at this point. Furthermore, the very fact that, unlike the Uninsured Motorist Act, the No-Fault Act does contain statutory ceilings in the amount of recovery indicates an intent to limit the amount of no-fault recovery under the statute.

*Id.* at 768 (emphasis in original). A Pennsylvania court adopted the above quoted reasoning in *Antanovich v. Allstate Insurance Co.,* 320 Pa. Super. 322, 467 A.2d 345 (1983).

We find the quotation from *Kirsch* applicable to Hawaii's No-Fault Law and uninsured motorist statute and therefore adopt it.

Furthermore, under our uninsured motorist statute although the automobile liability insurance policy must include uninsured motorist

---

the ownership, maintenance, or use of a motor vehicle, shall be delivered, issued for delivery, or renewed in this State, with respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 287-7, under provisions filed with and approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom, provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage in writing.

coverage, the insured may "reject the coverage in writing." HRS § 431-448. However, as indicated *supra,* no-fault basic coverage is compulsory for each motor vehicle. "Because no-fault insurance is compulsory insurance, and it is important that the premiums be kept as low as possible while allowing adequate coverage, there is a public policy argument against stacking." 8D Appleman § 5192 at 613 (footnote omitted).

D.

Finally, citing *Helmly v. Gulf Insurance Co.,* 159 Ga. App. 339, 283 S.E.2d 370 (1981); *Peterson v. Iowa Mutual Insurance Co.,* 315 N.W.2d 601 (Minn. 1982); *Holman v. All Nation Insurance Co.,* 288 N.W.2d 244 (Minn. 1980); and *Travelers Insurance Co. v. Lopez,* 93 Nev. 463, 567 P.2d 471 (1977), Rana urges us to follow the pro-stacking cases of other jurisdictions.

We note that there is no majority rule regarding stacking of no-fault insurance policies and coverages. Comment, *Insurance—Statutes— Stacking of Uninsured Motorist and No-Fault Coverages as Determined by Legislative Intent,* 59 N.D.L. Rev. 251, 252 (1983). *See also,* Annot., 29 A.L.R.4th 12 (1984).

For the reasons stated above we follow the anti-stacking cases such as *Kirsch v. Nationwide Insurance Co., supra; Antanovich v. Allstate Insurance Co., supra; and St. Paul Mercury Insurance Co. v. Andrews,* 321 N.W.2d 483 (N.D. 1982).

We conclude that the No-Fault Law precludes stacking of no-fault basic insurance coverages and, accordingly, affirm the summary judgment in favor of Bishop.

II.

The record discloses that at the time the trial court entered its order denying Rana's motion for attorney's fees and costs, an appeal on the merits—the summary judgment in favor of Bishop—was already pending. We have held that "once the notice of appeal has been filed, the court below lost jurisdiction of the case[.]" *Louis v. Corey,* 2 Haw. App. 556, 559, 634 P.2d 1055, 1058 (1981). *See also Wiginton v. Pacific Credit Corp.,* 2 Haw. App. 435, 634 P.2d 111 (1981); *D'Elia v. Association of Apartment Owners of Fairway Manor,* 2 Haw. App. 350, 632 P.2d 298

14

(1981). Of course, the notice must be valid and, in this case, it is. We therefore reverse the "Order Denying Plaintiff's Motion for Allowance of Attorney's Fees and Costs" filed on August 13, 1984.

Since the case must be remanded regarding the question of attorney's fees and costs, we believe it appropriate to provide some guidance to the trial court in the further proceedings.

Rana requested attorney's fees under the provisions of HRS § 294-30(a).[10] This court has construed that section as follows:

> Read in conjunction with HRS § 294-4(3), which provides, *inter alia,* for the mandatory payment of a claimant's attorney's fee where a claim is denied and suit is successfully brought to enforce it, it seems clear to us that under HRS § 294-30, the trial court judge has the discretion to award attorney's fees and costs to a losing claimant who files for no-fault insurance benefits unless it is determined by the trial court judge that the claim filed is fraudulent, frivolous or excessive.

*Kawaihae v. Hawaiian Insurance Companies,* 1 Haw. App. 355, 358-59, 619 P.2d 1086, 1090 (1980) (footnote omitted).

The trial court's order denying the allowance of attorney's fees and costs does not state the reasons therefor. Based on the argument made by Bishop and the trial court's comments at the hearing on the motion, however, we believe that the trial court denied the motion because Rana's claim for no-fault benefits was "excessive" under HRS § 294-30(a). The trial court's reasoning seems to have been: (1) Bishop had paid Rana the maximum no-fault benefits of $15,000 as defined in HRS § 294-2(10) and as provided for in the policy; (2) Rana's claim for additional benefits was based on the stacking of no-fault basic coverages; (3) the trial court ruled against Rana; and (4) therefore Rana's claim was "excessive." If our appraisal of the record is correct, the trial court erred in finding Rana's claim to be "excessive" under HRS § 294-30(a).

---

[10]As of the date of Rana's accident, HRS § 294-30(a) read:

A person making a claim for no-fault benefits may be allowed an award of a reasonable sum for attorney's fee, based upon actual time expended, which shall be treated separately from such claim and be paid directly by the insurer to the attorney, and all reasonable costs of suit in an action brought against an insurer who denies all or part of a claim for benefits under such policy unless the court determines that the claim was fraudulent, excessive, or frivolous.

Act 166, § 9, 1977 Haw. Sess. Laws 333, 337.

Under such construction of the term "excessive," no insured who claims sums in excess of statutory or policy limits and loses in court can ever be awarded attorney's fees and costs even if his claim is made in good faith and is non-frivolous, as in Rana's case. We do not believe the legislature intended this result. We believe that a claim for medical and hospital expenses which cannot be substantiated by statements and receipts or a claim for earnings loss unsupported by evidence, for example, may be an "excessive" claim.

Affirmed in part and reversed in part and remanded for further proceedings in accordance herewith.

*Mark N. Henry* (*A. Peter Howell* with him on the brief) for plaintiff-appellant.

*David L. Stretch* (*Roy F. Hughes* with him on the brief; *Libkuman, Ventura, Ayabe & Hughes,* of counsel) for defendant-appellee.

### DISSENTING OPINION OF HEEN, J.

I dissent.

I would reverse the judgment of the lower court. Notwithstanding the fact that we are the final arbiters of our own laws and are not bound by the federal court's interpretation of our statutes, I agree with and would apply the reasoning of the ninth circuit court of appeals in *Yamaguchi v. State Farm Mutual Automobile Insurance Co.,* 706 F.2d 940 (9th Cir. 1983), and allow "stacking". I find the terms of our no-fault statute to be highly ambiguous and as susceptible to the ninth circuit's interpretation as to the majority's here.

Moreover, I agree with Rana that the reasoning of those cases allowing stacking in uninsured motorist cases is equally applicable to no-fault cases and invalidates the clauses in his no-fault policy limiting Bishop's liability. The thrust of those decisions is that provisions in uninsured motorists policies which, "if effectuated, would reduce the benefits directly payable by the injured-insured's insurer to a sum below the statutory minimum" are invalid. *Walton v. State Farm Mutual Automobile Insurance Co.,* 55 Haw. 326, 329, 518 P.2d 1399, 1401 (1974). *See also Allstate Insurance Co. v. Morgan,* 59 Haw. 44, 575 P.2d 477 (1978); *American Insurance Co. v. Takahashi,* 59 Haw. 59, 575 P.2d 881 (1978).

In the instant case, Rana paid a sizeable separate premium to obtain no-fault coverage for each of his automobiles, which he was required by

16

law to maintain. Bishop accepted his premiums and stood ready to provide no-fault coverage for each and every vehicle covered by the policy. Bishop's position, now, supported by the majority of this court erases entirely the statutorily-required coverage for each of Rana's non-occupied automobiles. Bishop has received the windfall ruled against in *Walton, supra.*

Secondly and most importantly, it has been held to be unconscionable to permit an insurer to collect a premium for coverage of a type that the insurer is obligated by statute to provide and then to permit the insurer to use language insurer itself devised to avoid liability. *Simpson v. State Farm Mutual Automobile Insurance Co.,* 318 F. Supp. 1152, 1156 (S.D. Ind. 1970); *Blakeslee v. Farm Bureau Mutual Ins. Co.,* 388 Mich. 464, 474, 201 N.W.2d 786, 791 (1972). More pithily stated: "[insurer] charged a premium for the coverage; it cannot be permitted to vanish as the pea in the shell game", *Kraft v. Allstate Insurance Company,* 6 Ariz. App. 276, 431 P.2d 917 (1967). *Id.* at 333, 518 P.2d at 1403. In the case of no-fault insurance, not only is the insurer obligated by statute to provide it, but the automobile owner is required to maintain it. Where is the pea now?