125 P.3d 476

**SURVIVORS OF Roy W.C. YOUNG,**
Petitioner/Claimant–Appellant,

v.

**ISLAND FEELING, INC., and TIG P &
C Insurance Company, Respondent/Employer/Insurance Carrier–Appellee,**

and

**Special Compensation Fund,**
Respondent/Appellee.

No. 25661.

Supreme Court of Hawai'i.

Dec. 28, 2005.

As Corrected Jan. 26, 2006.

Herbert R. Takahashi and Rebecca L. Covert (of Takahashi, Masui & Vasconcellos), Honolulu, on the writ and supplemental brief,

for petitioner/claimant-appellant Survivors of Roy W.C. Young.

Robin R. Horner, Honolulu, on the supplemental brief, for respondent/employer/insurance carrier-appellee Island Feeling, Inc. and TIG P & C Insurance Company.

Frances E.H. Lum and Robyn M. Kuwabe, Deputy Attorneys General, on the supplemental brief, for respondent/appellee Special Compensation Fund.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by DUFFY, J.

In this workers' compensation death benefits case, Petitioner/Claimant–Appellant Shirlyn Young (Petitioner) and her son, Bronson Young (Bronson) [hereinafter, collectively, Petitioners], as the survivors of the employee, the late Roy W.C. Young (Young), appealed the February 12, 2003 decision of the Labor and Industrial Relations Board (LIRAB), which used the date-of-injury maximum weekly benefit rate (MWBR) to calculate their death benefits as opposed to the date-of-death MWBR urged by Petitioners. On March 18, 2005, the Intermediate Court of Appeals (ICA) issued a published opinion affirming the LIRAB's decision in *Young v. Island Feeling, Inc.*, 109 Haw.App. 287, 125 P.3d 508, 2005 WL 628879 (App. March 18, 2005) [hereinafter, ICA's Opinion or *Young I*]. Petitioners filed a timely application for a writ of certiorari (Application).

■ We granted Petitioners' Application for the sole purpose of addressing whether workers' compensation death benefits are calculated using the MWBR on the date of injury or the date of death. Based on the following, we hold that death benefits are calculated using the MWBR when the right arises: on the date of death.[1] Accordingly, we reverse.

---

1. Employer asserts that because Petitioners did not appeal their weekly benefit amount of death benefits, they cannot appeal the aggregate weekly benefit amount. Ordinarily, an appellate court "will not consider an issue not raised below unless justice so requires." *Bitney v. Honolulu Police Dep't*, 96 Hawai'i 243, 251, 30 P.3d 257, 265 (2001) (citing *Earl M. Jorgensen Co. v. Mark

## I. BACKGROUND

On July 7, 1988, Young, the president and Manager of Island Feeling, Inc., a Hawai'i-based clothing manufacturing company, suffered a ruptured cerebral aneurysm in the course of his employment and lapsed into a semi-comatose state. At the time of his injury, Young was married to Petitioner and together they had a son, Bronson. On November 16, 1988, Petitioner filed for temporary total disability (TTD) workers' compensation benefits on behalf of her husband. In a decision dated December 5, 1991, the Director of the Department of Labor and Industrial Relations (Director) ordered Young's employer, Island Feeling, Inc., through its insurance carrier, Transamerica Insurance Company [hereinafter, collectively, Employer], to pay Young TTD benefits.

Hawai'i Revised Statutes (HRS) § 386–31(b) (1985) provides that where an employee suffers a work-related injury which causes temporary total disability, the employer must pay the employee "a weekly benefit at the rate of sixty-six and two-thirds per cent of the employee's average weekly wages, subject to the limitations on weekly benefit rates prescribed in subsection (a)[.]" *Id.* Subsection (a) states the following limitation: "Beginning January 1, 1975, and during each succeeding twelve-month period thereafter, not more than the state average weekly wage last determined by the director[.]" HRS § 386–31(a) (1985). Young's average weekly wage (AWW) at the time of his injury was $644.23. Sixty-six and two-thirds per cent of this amount is $429.51. However, the State AWW in 1988 was $334.00, and the Director limited Young's TTD benefits accordingly. The LIRAB affirmed this decision on January 18, 1994.

On May 11, 1995, the Director held a follow-up hearing to evaluate updated medical reports regarding Young's physical condition.

---

*Constr. Inc.*, 56 Haw. 466, 475–76, 540 P.2d 978, 985 (1975)). Justice so requires in the instant case. By holding that the date-of-death MWBR should be used in calculating death benefits, we hold that the date-of-death MWBR should be used in determining the aggregate weekly benefits payable, the funeral and burial allowance, as well as the weekly benefit amount.

In a decision dated June 26, 1995, the Director awarded Young permanent total disability (PTD) benefits starting January 10, 1991. The relevant statute for PTD benefits, HRS § 386–31(a) (1993), provides that where a work-related injury causes PTD, the employer must pay the employee "a weekly benefit equal to sixty-six and two-thirds per cent of the employee's average weekly wages, subject to the following limitation: Beginning January 1, 1975, and during each succeeding twelve-month period thereafter, not more than the state average weekly wage last determined by the director[.]" The Director calculated Young's PTD benefits based upon the date-of-injury MWBR of $334.00 per week. The Director also awarded Young a weekly benefit adjustment of $103.00 beginning January 1, 1992, pursuant to HRS § 386–35 (a) (1) (1993).[2]

On May 15, 2000, Young died of complications from his work-related injury. On June 23, 2000, Petitioners filed a claim for death benefits as Young's dependents, under HRS § 386–41 (Supp.2000), including a funeral and burial allowance and a weekly benefit.

On April 19, 2001, the Director held a hearing to determine death benefits for Petitioners. In a decision dated May 14, 2001, the Director calculated their death benefits based on the date-of-injury MWBR of $334.00. Thus, pursuant to HRS § 386–41(a), Petitioners were awarded a total of $5,010.00 for funeral and burial expenses— $3,340.00 for funeral expenses ($334.00 × 10 = $3,340.00) and $1,670.00 for burial expenses ($334.00 × 5 = $1,670.00). Pursuant to HRS §§ 386–41 and –43 (1993 & Supp. 2000), the Director also awarded aggregate weekly benefits of $104,208.00 ($334.00 per week × 312 weeks). On May 23, 2001, the Director issued an amended, supplemental decision that apportioned the obligation to make death benefit payments equally between Employer and the Special Compensation Fund (SCF) [hereinafter, collectively, Respondents], pursuant to their compromise agreement.

On May 24, 2001, Petitioners appealed the Director's May 14 and 23, 2001 decisions to the LIRAB. The two relevant issues to be determined,[3] as stated in the August 3, 2001 Pretrial Order, were:

a. Whether the rate of compensation used to calculate funeral and burial expenses is based on the rate for the year injured employee died.[4]

b. Whether the aggregate weekly benefits payable for death benefits, pursuant to Section 386–43, H.R.S., is based on the rate of compensation for the year injured employee died.

On February 12, 2003, the Board filed its decision and order affirming the Director's May 14 and May 23, 2001 decisions. The Board concluded, in relevant part:

It is clear from our reading of HRS § 386–41(b) & (c), and HRS § 386–43(b), that the basis for computing dependents' weekly benefits is the deceased employee's AWW [average weekly wages] subject to a statutory maximum and minimum.

. . . .

Since there is no dispute that AWW for the purpose of calculating disability benefits is limited in HRS § 386–31 to the amount which when added to the benefit will equal the maximum weekly benefit as of January 1, 1992, and January 1 of every tenth year thereafter[.]

---

**2.** HRS § 386–35, entitled "Benefit adjustment," provides in relevant part:

(a) Effective January 1, 1992, and January 1 of every tenth year thereafter, any employee whose date of work injury is before January 1, 1992, and January 1 of every tenth year thereafter, and who is at any time after the work injury determined to be permanently and totally disabled shall be paid, without application, a supplemental allowance by the responsible employer calculated in accordance with the following provisions:

(1) In any case where the employee is entitled to receive the maximum weekly income benefit applicable on the date of the work injury, the supplemental allowance shall be an

**3.** A third issue relating to apportionment between Employer and SCF was subsequently withdrawn at trial.

**4.** On November 14, 2002, Petitioners filed an Application for Correction of Board's Pretrial Order, stating that issue "a" should have included weekly benefits along with funeral and burial expenses. The LIRAB denied the application. Petitioners appealed the denial to the ICA, which affirmed. *See infra* note 5.

State AWW at the time of the work injury, and since both HRS § 386–41(b) & (c) and HRS § 386–43(b) cite or refer to the limitation prescribed in HRS § 386–31, it follows then that the AWW for the purpose of calculating death benefits is also limited by the State AWW at the time of the work injury that caused the subsequent death.

. . . .

Accordingly, based on the foregoing, we conclude as follows: (1) the maximum benefit rate used to calculate funeral and burial expenses is based on the rate for the year the injury or accident is sustained; and (2) the aggregate weekly benefits payable for death benefits, pursuant to HRS § 386–43(b), is based on the maximum benefit rate for the year the injury or accident is sustained.

Petitioners appealed, and on March 18, 2005, the ICA issued its published opinion affirming the LIRAB. Specifically, the ICA concluded:

HRS § 386–41(a), governing funeral and burial allowances, HRS §§ 386–41(b) and –41(c), governing weekly benefits, and HRS § 386–43(b), governing aggregate weekly benefits, all cap their respective death benefits by express or implied reference to "the maximum weekly benefit rate prescribed in section 386–31[.]" HRS § 386–41(b); HRS § 386–43(b). There is no other colorable statutory reference. The MWBR prescribed in HRS § 386–31 is, in turn, "the state average weekly wage last determined by the director[.]" HRS § 386–31(a). Because HRS §§ 386–31(a) and –31(b) provide for PTD and TTD benefits, respectively, that is, disability benefits for employees injured on the job, the State average weekly wage referenced therein must perforce be determined as at the date of the employee's injury. Climbing back up the chain of inference, we conclude that the calculation of workers' compensation death benefits must likewise be based upon the date-of-injury MWBR. *Crowley v. City and County of Honolulu, Wastewater Mgmt.*, 100 Hawai'i 16, 17–18,

58 P.3d 74, 75–76 (App.2002) (in construing a statute, "our foremost responsibility is to ascertain and give effect to the intention of the legislature, obtained primarily from the language itself. Further, we must read the statutory language in the context of the entire statute and construe it in a manner consistent with its purpose" (citation and internal quotation marks omitted)); *Gray v. Admin. Dir. of the Court*, 84 Hawai'i 138, 148, 931 P.2d 580, 590 (1997) (in construing an ambiguous statute, " 'the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning' " (brackets and block quote format omitted) (quoting HRS § 1–15(1) (1993)); HRS § 1–16 (1993) ("Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another.").

*Young I* at 289, 125 P.3d at 510, 2005 WL 628879, at \*5.[5]

We granted Petitioners' Application, and we now reverse.

## II. *STANDARD OF REVIEW*

■ Appellate review of the LIRAB's decision is governed by HRS § 91–14(g) (1993), which provides:

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

---

5. The ICA also addressed Petitioners' contention that the Board abused its discretion in refusing Petitioners' application to correct the pretrial order. The ICA disagreed, but Petitioners did not raise this as an error in their Application.

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"[U]nder HRS § 91–14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6)." *In re Hawaiian Elec. Co. Inc.*, 81 Hawai'i 459, 465, 918 P.2d 561, 567 (1996) (citing *Outdoor Circle v. Harold K.L. Castle Trust Estate*, 4 Haw.App. 633, 638, 675 P.2d 784, 789 (1983)). Statutory interpretation is a question of law reviewable *de novo*. *State v. Levi*, 102 Hawai'i 282, 285, 75 P.3d 1173, 1176 (2003) (quoting *State v. Arceo*, 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996)) (quotation marks and citation omitted).

### III. *DISCUSSION*

The statutes at issue in this appeal are HRS § 386–41, which addresses death benefits, including a funeral and burial allowance and weekly benefits, and HRS § 386–43, which limits the total amount dependents may receive in weekly death benefits.

HRS § 386–41, entitled "Entitlement to and rate of compensation," provides in relevant part:

(a) Funeral and burial allowance. Where a work injury causes death, the employer shall pay *funeral expenses not to exceed ten times the maximum weekly benefit rate* to the mortician and *burial expenses not to exceed five times the maximum weekly benefit rate* to the cemetery. . . .

(b) Weekly benefits for dependents. In addition, the employer shall pay weekly benefits to the deceased's dependents at the percentages of the deceased's average weekly wages specified below, taking into account *not more than the maximum weekly benefit rate prescribed in section 386–31 divided by .6667* and not less than the minimum prescribed in the section divided by .6667.

. . . .

(c) Maximum weekly amounts. The sum of all weekly benefits payable to the dependents of the deceased employee shall not exceed sixty-six and two-thirds per cent of the employee's average weekly wages, *computed by observing the limits specified in subsection (b)*, if necessary, the individual benefits shall be proportionally reduced.

(Emphases added).

HRS § 386–43(b) provides that "[t]he aggregate weekly benefits payable on account of any one death shall not exceed the product of 312 times the effective maximum weekly benefit rate prescribed in section 386–31[.]"

A. *The Rights of Dependents to Statutory Workers' Compensation Death Benefits are Separate From the Rights of the Injured Employee.*

■ Petitioners assert that a claim for death benefits under the statutes at issue in the instant case is a separate, discrete claim from the claim of the injured worker. We agree.

In *Gambalan v. Kekaha Sugar Co.*, 39 Haw. 258, 263 (1952), this court stated that "[t]he right to enforce the dependency [death] benefits asserted attached at the time of death and not at the inception of or during the employment relationship prior thereto." Additionally, numerous jurisdictions recognize that a claim for death benefits is an independent, separate claim from that of the injured employee. *See, e.g., Richards v. Richards & Richards*, 664 P.2d 254, 255 (Colo.App.1983) ("Disability benefits awarded to a worker and death benefits awarded a worker's dependents are entirely independent of one another. This results in 'two distinct rights—one for the benefit of the workman, the other for the benefit of his dependents.' " (Citations omitted)); *A.O. Smith Corp. v. Indus. Comm'n*, 109 Ill.2d 52, 92 Ill.Dec. 524, 485 N.E.2d 335, 337 (1985) (distinguishing between claims arising from injury versus those arising from death and stating that "a cause of action created in favor of [an employee's] dependents for his injuries resulting in death .... does not come into existence until his death from such

injuries"); *Am. Steel Foundries v. Indus. Comm'n,* 361 Ill. 582, 198 N.E. 687, 690 (1935) ("The claim for compensation on behalf of the dependents is not derivative of the employee, but is an independent right of recovery for compensation created by the statute for the exclusive benefit of the dependents[.]" (Superseded on other grounds)); *Tran v. Avondale Shipyards, Inc.,* 665 So.2d 507, 509 (La.App.1995) ("[A] cause of action for death benefits accrue[s] upon the death of the injured party."); *Owens ex rel. Owens v. Water Gremlin Co.,* 605 N.W.2d 733, 735 (Minn.2000) ("The rights of the employee's dependents or potential heirs . . . are separate inchoate rights[.]"); *Booker v. Duke Med. Ctr.,* 297 N.C. 458, 256 S.E.2d 189, 195 (1979) ("[T]he dependents' right to compensation [is] separate and distinct from the rights of the injured employee[.]"); *Wray v. Carolina Cotton & Woolen Mills Co.,* 205 N.C. 782, 172 S.E. 487, 488 (N.C.1934) (stating that dependents' "right to compensation did not arise until his death, and . . . . [t]he basis of their claim was an original right which was enforceable only after his death"); *Sizemore v. State Workmen's Comp. Comm'r,* 159 W.Va. 100, 219 S.E.2d 912, 915 (W.Va.1975) ("[T]he dependents' rights are truly separate and distinct from the injured employee's rights[.]").

B. *Because the Right to Death Benefits is an Independent Claim From that of the Injured Employee, the Law in Effect at the Time of Death Must Be Used to Calculate Death Benefits.*

■ Because Petitioners' statutory right to death benefits arose at the time of Young's death, it follows that the law in effect on that date must be utilized to determine their death benefits. A number of other jurisdiction have so held. *See, e.g., Peterson v. Fed. Mining & Smelting Co.,* 67 Idaho 111, 170 P.2d 611, 613 (1946) ("[A]s to benefits and liabilities arising because of the employee's death, they become fixed at the time of the death."); *Owens ex rel. Owens v. Water Gremlin Co.,* 605 N.W.2d 733, 735 (Minn. 2000) ("The rights of the employee's dependents or potential heirs . . . are separate inchoate rights and are governed by the law in effect on the date of the employee's

death."); *In re Death of Knight,* 877 P.2d 602, 604–05 (Okl.1994) ("Since this statutory right [to death benefits] does not arise until death, it follows that the right which vests must be determined under the law in effect on that date."); *Silver King Coalition Mines Co. v. Indus. Comm'n,* 2 Utah 2d 1, 268 P.2d 689, 691 (1954) ("[W]here the statute confers upon the dependents a new and independent right to compensation on account of his death, it is generally held that the right to such compensation is governed by the law in force at the time of death rather than at the time of injury, when the two events are separated in time." (Quoting 58 Am.Jur. Workmen's Compensation § 73)); *Sizemore v. State Workmen's Comp. Comm'r,* 159 W.Va. 100, 219 S.E.2d 912, 915–16 (1975) ("[S]ince the rights of the dependents accrue at the time of death, the statute in effect at the time of death should control as to such rights. No vested rights are impaired by applying the statute in force at the time of death because, until death occurs, the surviving dependents have no rights and the employer has no fixed liability.").

Consequently, we hold that workers' compensation death benefits must be calculated using the law in effect at the time of death. We now turn to the language of the statutes at issue.

C. *Interpreting the Workers' Compensation Death Benefits Statute*

■ With regard to statutory interpretation, this court has stated:

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

*State Farm Mut. Auto. Ins. Co. v. Gepaya,* 103 Hawai'i 142, 145, 80 P.3d 321, 324 (2003) (quoting *Troyer v. Adams,* 102 Hawai'i 399, 409, 77 P.3d 83, 93 (2003)). This court has previously discussed the purpose of Hawaii's Workers' Compensation Laws, including HRS §§ 386–31, –41, and –43:

A large number of cases have recognized that our workers' compensation statute has a beneficent purpose and should be afforded liberal construction in favor of the employee, to fulfill the humanitarian purposes for which it was enacted. Indeed, since the supreme court's first look at Hawaii's then new workers' compensation statute in 1916, analyses in these kinds of cases have been grounded on the humanitarian purposes premise.

*Korsak v. Hawaii Permanente Med. Group,* 94 Hawai'i 297, 306–07, 12 P.3d 1238, 1247–48 (2000) (internal brackets, citations, and quotation marks omitted).

■ HRS §§ 386–41(b) and (c), and –43(b) cap death benefits by reference to "the maximum weekly benefit rate prescribed in section 386–31." As correctly noted by the ICA, "The MWBR prescribed in HRS § 386–31 is, in turn, 'the state average weekly wage last determined by the director[.]' HRS § 386–31(a)." *Young I* at 289, 125 P.3d at 510, 2005 WL 628879, at *5. Since the right to death benefits arises at the time of death and the death benefits statute must be interpreted as of the date of death, it follows that the MWBR used to calculate death benefits is the state average weekly wage last determined by the director at the time of death. This interpretation is consistent with the statute's humanitarian and beneficent purposes.

Indeed, the LIRAB utilized the date-of-death MWBR to calculate death benefits in its decision and order in *Teputepu v. N. Shore Detective & Sec. Agency, Inc.,* Case No. AB 75–170, at 5 (1976). In *Teputepu,* the LIRAB faced the same issue we face in the instant case: "[W]hether the law in effect on the date of the worker's injury or the law in effect on the date of the the [sic] worker's death determines the benefits to which the dependents of the deceased worker who died from an injury which arose out of and in the course of his employment are entitled." *Id.* at 1–2. The LIRAB recognized that "it is the death itself which is the compensable event, although the dependents' right to death benefits arose out of the compensable injury." *Id.* at 4; *see also Flor v. Holguin,* 94 Hawai'i 70, 83, 9 P.3d 382, 395 (2000) ("A

compensable injury is an injury for which compensation is payable, and the date of such injury is *not the time of the accident or the occurrence causing the injury,* but the time ... *when the right to compensation accrues.*" (Quoting *In re Palama,* 34 Haw. 65, 71 (1937)) (emphases added)). The LIRAB therefore concluded that the MWBR at the time of his death, which was greater than the MWBR at the time of his injury, should be used to calculate death benefits, stating that "the effective date for the application of the statute is the date of death." *Teputepu* at 5.

Consistent with the LIRAB's prior decision in *Teputepu,* and based upon the plain and unambiguous language of the statutes at issue, we hold that death benefits should be calculated utilizing the date-of-death MWBR.

D. *Legislative Intent*

The statutes' lack of ambiguity in instructing the use of the date-of-death MWBR to calculate death benefits is confirmed by a review of the legislative history of Hawaii's Workers' Compensation statutes.

1. **Legislative history of section 386–35.**

SCF asserts that the legislative history of section 386–35 indicates the legislature's intent to calculate death benefits at the time of injury. SCF points to the fact that, as first introduced in 1979, the bill proposed supplemental benefits to "provide economic relief to totally disabled workers *and dependents of deceased workers* who receive low weekly compensation benefits based on previously legislated maximum benefit rate." Hse. Stand. Comm. Rep. No. 683, in 1979 House Journal, at 1486 (emphasis added). The Finance Committee then "amended the bill by deleting all references to death benefits." *Id.* SCF asserts that the codification of HRS § 386–35 without reference to death benefits "militates against Dependents' contention that the legislature intended to protect dependents against the negative effects of inflation." We disagree. While it may have been the legislature's intent not to provide *supplemental* benefits to dependents of deceased workers *after their death benefits had been calculated,* it does not necessarily follow that

it was not the legislature's intent to use the date-of-death MWBR for the *initial* calculation of death benefits.

Indeed, the Employment Opportunities and Labor Relations Committee, addressing the same bill prior to deletion of references to death benefits, stated: "Considering today's economy, a totally disabled worker who was injured many years ago, or *a deceased worker's dependents receiving compensation benefits based on benefit rates at the time of* the injury or *death,* would be in need of financial assistance." Hse. Stand. Comm. Rep. No. 187, in 1979 House Journal, at 1229. This statement clearly indicates the legislature's understanding that a totally disabled worker was receiving disability benefits based on the rates at the time of injury, whereas a deceased workers' dependents were receiving death benefits based on benefit rates at the time of death.

### 2. Legislative history of section 386–41(a)—funeral and burial expenses.

In 1971, the Hawai'i Legislature amended HRS § 386–41 to increase the maximum amount for funeral and burial expenses to $1,000 and $500, respectively (1971 Haw. Sess. L. Act 24, § 1 at 27), because the then-present maximum allowance was "inadequate to meet current funeral and burial costs." Sen. Stand. Comm. Rep. No. 220, in 1971 Senate Journal, at 880. The House Standing Committee Report for the same bill stated that "an adjustment of the maximum allowance should be made to closely reflect the actual funeral and burial costs which must be incurred by the families of the deceased workers." Hse. Stand. Comm. Rep. No. 563, in 1971 House Journal, at 932. In 1982, the legislature again amended HRS § 386–41, by extending funeral expenses to a "maximum of ten times the weekly benefit rate and [extending] burial expenses to five times the maximum weekly benefit rate[,]" which is the language applicable to the instant case and still in effect today. 1982 Haw. Sess. L. Act 52, § 1 at 58; Hse. Stand. Comm. Rep. No. 745–82, in 1982 House Journal, at 1239. The Standing Committee Report stated that the amendment would "bring the allowances more in line with the current average cost of

a funeral and burial." Hse. Stand. Comm. Rep. No. 745–82, in 1982 House Journal, at 1239; *see also* Sen. Stand. Comm. Rep. No. 338–82, in 1982 Senate Journal, at 1090.

In the instant case, Petitioners' actual funeral and burial costs were $14,262.07. Using the date-of-injury MWBR, they received $5,010.00; had the date-of-death MWBR been used, they would have received $7,935.00 ($529.00 × 10 + $529.00 × 5). Although still well below their actual expenses, using the date-of-death MWBR would reflect the legislature's intent to "bring the allowances more in line with the current average cost of a funeral and burial."

### 3. Legislative history of sections 386–41(b) and (c)—Weekly benefits.

In 1974, the legislature amended sections 386–31, –41, and –43 by, *inter alia,* increasing the maximum weekly benefit amount, which had been set at $112.50, to the level of the State AWW, with annual adjustments of the maximum amount "to reflect changes in the AWW thereafter." Sen. Stand. Comm. Rep. No. 755–74, in 1974 Senate Journal, at 1039–40; 1974 Haw. Sess. L. Act 153, §§ 1, 2, 4, 5 at 281–86. The Standing Committee Reports stated that this change would "remove part of the inequity of injured workers and dependents of deceased workers receiving less than 2/3rds of the weekly wages of the injured or deceased workers, *the intended benefit amount.*" Sen. Stand. Comm. Rep. No. 755–74, in 1974 Senate Journal, at 1040 (emphasis added); Hse. Stand. Comm. Rep. No. 44–74, in 1974 House Journal, at 590 (emphasis added).

Another House Standing Committee Report stated:

> When the weekly maximum of $112.50 was by law established in 1965, the sum exceeded the State average weekly wage as determined annually by the Director ... and the *maximum limit truly reflected 2/3 of the weekly wages of a substantial segment of the work force.* Today, however, many of the injured are receiving considerably less than 2/3 of their wages because of the weekly maximum limit.

Hse. Stand. Comm. Rep. No. 262–74, in 1974 House Journal, at 655 (emphasis added).

The report further stated that pursuant to the amendment, the weekly limits would be automatically adjusted annually, which would "benefit the permanent total disability and death cases because the aggregate limit of $35,100 will be increased[.]" *Id.*

This legislative history evidences the legislature's intent to annually adjust the maximum amount payable for disability and death benefits in order to more closely reflect the employee's intended benefit, two-thirds of the employee's AWW. Utilizing the date-of-death MWBR to calculate death benefits is thus consistent with the legislature's intent.

## IV. *CONCLUSION*

Based on the foregoing, we hold that the date-of-death MWBR should be used to calculate death benefits. We therefore reverse the ICA's Opinion and remand this matter to the LIRAB for calculation of Petitioners' death benefits using the date-of-death MWBR and issuance of an order awarding such benefits.