**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-19-0000479**
**23-JUN-2023**
**08:11 AM**
**Dkt. 68 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---


SURVIVORS OF PAUL JOKIEL,
Claimant-Appellee/Appellee/Cross-Appellee,
v.
UNIVERSITY OF HAWAII, STATE OF HAWAIʻI,
Employer-Appellant/Appellant,
and
FiRMS CLAIMS SERVICES, Insurance Carrier-
Appellant/Appellant,
and
SPECIAL COMPENSATION FUND,
Appellee/Appellee/Cross-Appellant


NO. CAAP-19-0000479


APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2017-111 and DCD NO. 2-16-48369)


JUNE 23, 2023


HIRAOKA, PRESIDING JUDGE, NAKASONE AND MCCULLEN, JJ.


OPINION OF THE COURT BY HIRAOKA, J.

        This appeal involves a claim for dependents' death benefits under Hawaii Revised Statutes (**HRS**) § 386-41 (2015), part of the Hawaiʻi Workers' Compensation Law.  In <u>Survivors of Young v. Island Feeling, Inc.</u>, 109 Hawaiʻi 255, 125 P.3d 476 (2005), <u>as corrected</u> (Jan. 26, 2006), the supreme court held that

the maximum weekly benefit rate (**MWBR**) on the date of the employee's death, rather than the date of injury, applies to dependents' death benefits.  Id. at 260, 125 P.3d at 481.  This appeal involves a dispute over *how* the amount of a dependent's weekly death benefit is to be calculated under the statute.

## I.  BACKGROUND

**Paul** Jokiel was employed by Employer-Appellant/ Appellant University of Hawaiʻi.  He died on April 28, 2016.  His surviving spouse, **Carole Ann** Jokiel, made a workers' compensation claim for dependents' death benefits.  The University of Hawaiʻi and Insurance Carrier-Appellant/Appellant **FiRMS** Claims Services (together, **UH**) made a claim for contribution from Appellee/ Appellee/Cross-Appellant Special Compensation Fund (**SCF**).[1]

The **Director** of the Department of Labor and Industrial Relations awarded Carole Ann weekly benefits of $812 for 312 weeks, for a total of $253,344, from UH.  The Director concluded that SCF was not liable for benefits.

UH appealed the Director's decision to the Labor and Industrial Relations Appeals Board (**LIRAB**).  UH and SCF settled their dispute over apportionment of benefits.  The remaining issue before LIRAB was: "What is the proper calculation of [Carole Ann]'s death benefit rate for this claim[?]"

UH filed a motion for partial summary judgment, in which SCF joined.  They sought "to correct the [weekly] death benefit calculation [from $812] to $608.97[.]"  A majority of LIRAB denied the motion, with the Chair dissenting.

LIRAB issued its Decision and Order on March 8, 2019. The majority concluded that "the proper . . . weekly death benefit rate . . . is $1,186.39."  LIRAB's Chair dissented,

---

[1]     SCF is a trust fund administered by the State of Hawaiʻi.  HRS § 386-151(a) (2015).  It is funded by annual levies upon workers' compensation insurers, HRS § 386-153 (2015), and uninsured employers and self-insurance groups, HRS § 386-154 (2015).

determining that Carole Ann should have been awarded "weekly dependent benefits of $608.97[.]"

UH and SCF filed a joint motion for reconsideration. LIRAB denied reconsideration on June 21, 2019, with the Chair dissenting.  UH appealed, and SCF cross-appealed.[2]

## II. STANDARD OF REVIEW

Appellate review of a LIRAB decision is governed by the provisions of HRS § 91-14(g).  Survivors of Young, 109 Hawaiʻi at 258, 125 P.3d at 479 (applying HRS § 91-14(g) (1993)).  The statute currently provides:

> Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1)   In violation of constitutional or statutory provisions;
>
> (2)   In excess of the statutory authority or jurisdiction of the agency;
>
> (3)   Made upon unlawful procedure;
>
> (4)   Affected by other error of law;
>
> (5)   Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6)   Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

HRS § 91-14(g) (Supp. 2021).

UH and SCF challenge LIRAB's interpretation of HRS § 386-41.  "Statutory interpretation is a question of law reviewable de novo."  Survivors of Young, 109 Hawaiʻi at 259, 125 P.3d at 480 (citation omitted).

---

[2]   Carole Ann did not file an answering brief.

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

Id. at 260, 125 P.3d at 481 (citation omitted).

## III. DISCUSSION

### A.    Statutory Language

HRS § 386-41 (2015) provides, in relevant part:

> (b)    Weekly benefits for dependents. In addition, the employer shall pay weekly benefits to the deceased's dependents at **the percentages of the deceased's average weekly wages specified below**, taking into account not more than the maximum weekly benefit rate prescribed in section 386-31 divided by .6667 and not less than the minimum prescribed in the section divided by .6667.[3]
>
> To the dependent widow, widower, or reciprocal beneficiary, if there are no dependent children, **fifty per cent**.

(Emphasis added.) The record does not indicate that Paul and Carole Ann had any dependent children.

LIRAB found, and UH and SCF do not dispute, that Paul's average weekly wages (**AWW**) were $2,372.77. Thus, for purposes of HRS § 386-41(b), the "percentages of the deceased's [AWW] specified below" are ($2,372.77 x .50) or $1,186.39. That was Carole Ann's weekly death benefit rate calculated by the LIRAB majority.

HRS § 386-41(b), however, "cap[s] death benefits by reference to 'the maximum weekly benefit rate prescribed in section 386-31.'" Survivors of Young, 109 Hawaiʻi at 261, 125 P.3d at 482. HRS § 386-31 (2015) provides, in relevant part:

> (a) Permanent total disability. Where a work injury causes permanent total disability the employer shall pay the injured employee a weekly benefit equal to sixty-six and two-thirds per cent of the employee's average weekly wages, **subject to the following limitation**:

---

[3]    The minimum weekly benefit rate is not relevant to this case.

4

> Beginning January 1, 1975, and during each succeeding twelve-month period thereafter, not more than the ***state average weekly wage*** last determined by the director, rounded to the nearest dollar, nor less than $38 or twenty-five per cent of the foregoing maximum amount, rounded to the nearest dollar, whichever is higher.

(Emphasis added.)  "[T]he MWBR used to calculate death benefits is the state [AWW] last determined by the director at the time of death."  Survivors of Young, 109 Hawai‘i at 261, 125 P.3d at 482.  The parties agree that the state AWW for 2016 (the year Paul died) was *$812.00*.  That was Carole Ann's weekly death benefit rate as calculated by the Director.

However, the HRS § 386-41(b) weekly benefit limit is "the [MWBR] prescribed in section 386-31 *divided by .6667*[.]"  (Emphasis added.)  The 2016 MWBR, $812.00, divided by .6667 equals $1,217.94.  The $1,217.94 benefit limit is greater than fifty per cent of Paul's AWW ($1,186.39).  Accordingly, under HRS § 386-41(b), Carole Ann is entitled to a dependent death benefit of $1,186.39 per week.  The LIRAB majority's calculation was consistent with Survivors of Young and the plain language of HRS §§ 386-41 and 386-31.

UH and SCF rely on Survivors of Okimoto v. State, Dep't of Transp., Case No. AB 80-81 (2-78-26114).  They argue that under Survivors of Okimoto, because Paul's AWW ($2,372.77) were more than the 2016 HRS § 386-41(b) weekly benefit limit ($1,217.94), the latter amount should be reduced by fifty per cent to calculate Carole Ann's dependent death benefit of $608.97 under HRS § 386-41(b).  But this runs counter to the plain language of HRS § 386-41(b).  The "taking into account" language in the statute compares "the percentages of the deceased's [AWW] specified below" (in this case, $1,186.39) — *not* the deceased's straight AWW — with the weekly benefit limit (in this case, $1,217.94).  The calculation in Survivors of Okimoto is contrary to the plain language of HRS §§ 386-31 and 386-41.

UH makes an argument about the amendments to the Hawai‘i Workers' Compensation Law since 1955 and the "formulaic expression contained in HRS § 386-41(b)" after the 1974

amendments.  But UH appears to misapply the statutory language by *multiplying* the state AWW by .6667[4] instead of *dividing* by .6667[5] to obtain the maximum weekly dependent death benefit rate, as required by HRS § 386-41(b); and by multiplying Paul's AWW by .6667[6] instead of reducing it by "fifty per cent"[7] to obtain "the percentages of the deceased's average weekly wages specified below" as required by HRS § 386-41(b) for a dependent widow with no dependent children.  UH's calculations are contrary to the plain language of HRS § 386-41(b) applicable to this case.

### B.   <u>Legislative Intent</u>

SCF makes an argument about legislative history and intent, with which UH agrees.  Legislative history is useful to "discern the underlying policy which the legislature seeks to promulgate and, thus, . . . determine if a literal construction would produce an absurd or unjust result, inconsistent with the policies of the statute."  <u>Survivors of Medeiros v. Maui Land & Pineapple Co.</u>, 66 Haw. 290, 297, 660 P.2d 1316, 1321 (1983).

> A large number of cases have recognized that our workers' compensation statute has a beneficent purpose and should be afforded liberal construction in favor of the employee, to fulfill the humanitarian purposes for which it was enacted. Indeed, since the supreme court's first look at Hawaii's then new workers' compensation statute in 1916, analyses in these kinds of cases have been grounded on the humanitarian purposes premise.

<u>Survivors of Young</u>, 109 Hawaiʻi at 261, 125 P.3d at 482 (citation omitted).

The result we reach under the plain language of HRS §§ 386-31 and 386-41 allows the spouse of a deceased employee who was earning more than the state AWW to receive compensation

---

[4]    Which reduces the amount from $812 to $541.36.

[5]    Which increases the amount from $812 to $1,217.94.

[6]    Which reduces the amount from $2,372.77 to $1,581.93.

[7]    Which reduces the amount from $2,372.77 to $1,186.39.

consistent with the humanitarian purposes of the workers' compensation law.  Under UH's and SCF's interpretation of the law, Carole Ann would receive a weekly benefit almost fifty per cent less ($608.97) than the weekly benefit amount established by the plain language of the law ($1,186.39).  Our analysis does not produce "an absurd and unjust result . . . clearly inconsistent with the purposes and policies of the statute."  Survivors of Medeiros, 66 Haw. at 297, 660 P.2d at 1321 (citations omitted).  Rather, it is consistent with the humanitarian purposes for which the workers' compensation law was enacted.  It is UH's and SCF's interpretations that are inconsistent with the humanitarian purposes for which the Hawai'i Workers' Compensation Law was enacted.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the "Decision and Order" of the LIRAB majority, filed on March 8, 2019, and the "Order Denying Motion for Reconsideration" of the LIRAB majority, filed on June 21, 2019.

On the briefs:

Li-Ann Yamashiro,
Staci I. Teruya,
Deputy Attorneys General,
Department of the Attorney
General, State of Hawai'i,
for Appellee/Appellee/
Cross-Appellant Special
Compensation Fund,
Department of Labor
and Industrial Relations.

Kenneth T. Goya,
Steven L. Goto,
for Employer-Appellant/
Appellant University of Hawai'i
and Insurance Carrier-Appellant/
Appellant FiRMS Claims Services.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge