GLEN J. KELLY, Claimant-Appellant,
v.
METAL-WELD SPECIALTIES, INC. and HAWAII EMPLOYERS' MUTUAL INSURANCE COMPANY, Employer/Insurance Carrier-Appellee and
GLEN J. KELLY, Claimant-Appellant,
v.
METAL-WELD SPECIALTIES, INC. and HIH AMERICA INSURANCE COMPANY OF HAWAII, Employer/Insurance Carrier-Appellee and
METAL-WELD SPECIALTIES, INC. and JOHN MULLEN AND COMPANY, Employer/Insurance Carrier-Appellee.
Nos. 27127, 27208
Intermediate Court of Appeals of Hawaii.
September 30, 2008.
On the briefs:
David J. Mikonczyk, for Claimant-Appellant.
Robert C. Kessner, Sylvia K. Higashi, for Employer-Appellee.
METAL WELD SPECIALTIES, INC. and Insurance Carrier-Appellee HAWAII EMPLOYERS' MUTUAL INSURANCE CO.
Brian G.S. Choy Keith M. Yonamine Joaquin V.E. Manibusan, III (Law Offices of Brian G.S. Choy) for Employer-Appellee METAL WELD SPECIALTIES, INC. and Insurance Carrier-Appellee HIH AMERICA INSURANCE COMPANY OF HAWAII (HAWAII INSURANCE GUARANTY ASSOCIATION)
Sidney J.Y. Wong Colette H. Gomoto (Wong & Oshima) for Employer-Appellee METAL WELD SPECIALTIES, INC. and Insurance Carrier-Appellee JOHN MULLEN & COMPANY, INC.

SUMMARY DISPOSITION ORDER
FOLEY, Presiding Judge, NAKAMURA, and LEONARD, JJ.
At all relevant times, Claimant-Appellant Glen J. Kelly (Kelly) was employed as an ironworker by Metal-Weld Specialties, Inc. (Metal-Weld). On December 2, 1999, Kelly sustained a work-related injury to his low back. Metal-Weld's workers' compensation insurance carrier at that time was HIH America Insurance Carrier of Hawaii (HIH). After HIH was declared insolvent, Hawaii Insurance Guaranty Association (HIGA) became the successor insurance carrier.
On July 22, 2002, Kelly complained of back and leg pain while working for Metal-Weld on the Westin Kaanapali resort project. Metal-Weld's workers' compensation insurance carrier at that time was Hawai`i Employers' Mutual Insurance Company (HEMIC). However, pursuant to a wrap-around agreement between the general contractor on the project and the resort owner, Starwood Hotels and Resorts Worldwide, Inc. (Starwood), Starwood provided workers' compensation coverage to Metal-Weld employees working on the project. Starwood provided coverage through AIG Claims Services (AIG), whose claims were adjusted by John Mullen and Company, Inc. (Mullen).

I.

A.
Three different cases were brought before the Director of the Department of Labor and Industrial Relations (the Director). Case No. 7-99-03946 involved a claim by Kelly against Employer/Insurance Carrier-Appellee Metal-Weld and HIH/HIGA (collectively, Metal-Weld/HIH/HIGA) for benefits arising out of the December 2, 1999, injury. Case No. 7-02-03010 involved a claim by Kelly against Employer/Insurance Carrier-Appellee Metal-Weld and Mullen (collectively, Metal-Weld/Mullen) arising out of the alleged aggravation of the December 2, 1999, injury or new injury sustained on July 22, 2002. These two cases were consolidated for decision before the Director and on appeal to the Labor and Industrial Relations Appeals Board (LIRAB). Case No. 7-02-02454 involved a claim by Kelly against Employer/Insurance Carrier-Appellee Metal-Weld and HEMIC (collectively, Metal-Weld/HEMIC) arising out of the same alleged July 22, 2002, work injury.
In Appeal No. 27208 to this court, Kelly appeals from the LIRAB's Decision and Order filed on March 22, 2005. In that decision, the LIRAB concluded that: 1) Kelly sustained a 10% permanent partial disability (PPD) of the whole person as a result of his December 2, 1999, work injury; 2) Kelly sustained a recurrence of his December 2, 1999, injury on July 22, 2002, not an aggravation of that injury or a new injurymeaning that Metal-Weld HIH/HIGA rather than Metal-Weld/Mullen was responsible for the payment of Kelly's post-July 22, 2002, benefits; and 3) Metal-Weld/HIH/HIGA was not entitled to a credit for the benefits it paid to Kelly after July 22, 2002. Metal-Weld/HIH/HIGA did not appeal from the LIRAB's March 22, 2005, decision, but filed opening and reply briefs in support of Kelly's position. See Hawai`i Rules of Appellate Procedure (HRAP) Rule 3(d).
In Appeal No. 27127 to this court, Kelly appeals from the LIRAB's: 1) Decision and Order filed on December 27, 2004; 2) Order Denying Motion for Reconsideration filed on January 14, 2005; 3) Amended Decision and Order Filed January 14, 2005; and Order Granting Motion and Petition for Fees and Costs filed on February 14, 2005. In its December 27, 2004, decision, the LIRAB granted summary judgment in favor of Metal-Weld/HEMIC and stated the following conclusions: 1) Kelly did not sustain an injury on July 22, 2002, for which Metal-Weld/HEMIC was liable; 2) the Director did not err in denying Kelly's request for penalties against Metal-Weld/HEMIC, pursuant to Hawaii Revised Statutes (HRS) § 386-95 (Supp. 2007); 3) Kelly was not entitled to attorney's fees and costs associated with his pursuit of penalties against Metal-Weld/HEMIC; 4) the Director did not err in assessing Kelly with attorney's fees and costs incurred by Metal-Weld/HEMIC in the amount of $2,573.80, pursuant to HRS § 386-93(a) (1993); 5) the Director's assessment of attorney's fees and costs was not procedurally defective; and 6) the Director did not err in determining that Kelly filed two claims against different insurance carriers (HEMIC and Mullen) for the same alleged July 22, 2002, work injury. By Order dated February 14, 2005, the LIRAB also granted Metal-Weld/HEMIC's motion for the assessment of attorney's fees and costs against Kelly, pursuant to HRS § 386-93(a). The LIRAB assessed Kelly with attorney's fees and costs, in the amount of $6,076.95, incurred by Metal-Weld/HEMIC in defending against Kelly's appeal to the LIRAB.
We granted Kelly's motion to consolidate Appeal Nos. 27208 and 27127.

B.
On appeal in No. 27208, Kelly argues that the LIRAB erred in: 1) determining that his alleged July 22, 2002, work injury was a recurrence and a natural progression of his December 2, 1999, injury, and not an aggravation or new injury; 2) limiting its PPD award to 10% of the whole person; and 3) failing "to consolidate and address the unlawful procedures of [Metal-Weld]."
On appeal in No. 27127, Kelly challenges the LIRAB's determination that he acted without reasonable grounds in pursuing his claim for benefits against Metal-Weld/HEMIC for the alleged July 22, 2002, work injury. The LIRAB found that Kelly's claim against Metal-Weld/HEMIC was unreasonable because Kelly was simultaneously pursing a claim against Metal-Weld/Mullen for the same alleged July 22, 2002, work injury and because Metal-Weld/Mullen had conceded that it was responsible for any work-related injury sustained by Kelly on that date. Kelly argues that the LIRAB erred in granting summary judgment for Metal-Weld/HEMIC because: 1) the LIRAB was wrong in concluding that Kelly filed two claims for the same alleged work accident of July 22, 2002; 2) Metal-Weld/HEMIC was the primary insurer and had a statutory duty to provide coverage; 3) cumulative procedural irregularities and misrepresentations resulted in undue prejudice to Kelly; 4) the LIRAB should have consolidated his appeal involving Metal-Weld/HEMIC with his appeal involving Metal-Weld/HIH/HIGA and Metal-Weld/Mullen; and 5) penalties should have been awarded against Metal-Weld for filing a late WC-1 report, pursuant to HRS § 386-95. Kelly further argues that the LIRAB erred in awarding attorney's fees and costs to Metal-Weld/HEMIC instead of to Kelly.[1]
We affirm the LIRAB's decisions appealed by Kelly in all respects, except for the LIRAB's decisions relating to the assessment of attorney's fees against Kelly pursuant to HRS § 386-93(a). HRS § 386-93(a) authorizes only the assessment of costs, but not attorney's fees, against a party who has brought, prosecuted, or defended a proceeding under the Hawai`i workers' compensation law without reasonable grounds. Thus, we vacate the LIRAB's decision to uphold the Director's assessment of attorney's fees against Kelly and the LIRAB's decision to assess attorney's fees against Kelly for his appeal to the LIRAB, and we remand the case with instructions that only the costs incurred by Metal-Weld/HEMIC in the pertinent proceedings before the Director and the LIRAB be assessed against Kelly.

II.
The LIRAB's findings of fact are reviewed under the clearly erroneous standard. Nakamura v. State, 98 Hawai`i 263, 267, 47 P.3d 730, 734 (2002). The court considers whether the findings are "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. The clearly erroneous standard requires the court to sustain the [LIRAB's] findings unless the court is left with a firm and definite conviction that a mistake has been made." Id. (certain brackets omitted). Mixed questions of fact and law are also reviewed under the clearly erroneous standard "because the conclusion is dependent upon the facts and circumstances of the particular case." Id.
In reviewing the LIRAB's decisions, "we give deference to the LIRAB's assessment of the credibility of witnesses and the weight the LIRAB gives to the evidence." Moi v. State, Dept. of Public Safety, 118 Hawai`i 239, 242, 188 P.3d 753, 756 (App. 2008).
It is well established that courts decline to consider the weight of the evidence to ascertain whether it weighs in favor of the administrative findings, or to review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially the findings of an expert agency dealing with a specialized field.
Nakamura, 98 Hawai`i at 268, 47 P.3d at 735 (block quote format changed).

A.
The LIRAB did not clearly err in determining that Kelly sustained a recurrence of his December 2, 1999, injury on July 22, 2002, and not an aggravation of that injury or a new injury. The LIRAB relied upon the opinion of Dr. Leonard Cupo, who performed an independent medical examination (IME) of Kelly. Dr. Cupo opined that Kelly did not aggravate or accelerate Kelly's pre-existing chronic low back pain, degenerative disc disease of the lumbosacral spine, or left lower extremity radiculopathy on July 22, 2002, as a result of his work activities. Dr. Cupo also stated that what happened to Kelly on and after July 22, 2002, was a recurrence of the December 2, 1999, injury and the natural progression of the pre-existing injury. The LIRAB also relied upon the opinion of Dr. Andrew Janssen, who performed IMEs of Kelly at the request of Metal-Weld/HIH/HIGA both before and after July 22, 2002. Dr. Janssen opined that Kelly's post-July 22, 2002, condition represented a natural progression of the degenerative process in Kelly's low back following the December 2, 1999, injury.
The crux of Kelly's argument is that the LIRAB erred in crediting the opinions of Drs. Cupo and Janssen, who supported the position of Metal-Weld/Mullen, instead of the opinions of experts supporting the position of Kelly and Metal-Weld/HIH/HIGA. However, we give deference to the LIRAB's assessment of the weight and credibility of the evidence. Here, the LIRAB provided a detailed explanation of its decision:
We conclude that [Kelly] sustained a recurrence of his December 2, 1999 work injury with METAL-WELD/HIH[/HIGA], on July 22, 2002, and not a new injury/aggravation on July 22, 2002, with METAL-WELD/[Mullen], based on Dr. Cupo's opinion that what had occurred on July 22, 2002, was a recurrence, Dr. Janssen's opinion that the deterioration in [Kelly's] low back condition had continued and that the increase in [Kelly's permanent disability] was due to the natural progression of his ongoing low back condition, the absence of a documented low back injury on July 22, 2002, in the medical records, Dr. Taniguchi's opinion that the September 2002 MRI was similar to the December 2000 MRI, the clinical findings of the various doctors that were similar both before and after July 22, 2002, Dr. Pleiss's opinion that [Kelly] would suffer exacerbations of his condition, and [Kelly's] own deposition testimony that the low back and left leg pain he experienced on July 22, 2002, was similar to his pain after the December 2, 1999 work injury.
We conclude that there was substantial evidence to support the LIRAB's determination that Kelly sustained a recurrence of his December 2, 1999, injury on July 22, 2002, rather than an aggravation of that injury or a new injury. The LIRAB's determination was not clearly erroneous.
Kelly argues that the LIRAB violated the presumption of compensability set forth in HRS § 386-85 (1993)[2] by determining that Kelly did not sustain an aggravation or new injury on July 22, 2002. We disagree. In this case, there was no dispute that Kelly's post-July 22, 2002, condition was attributable to a work-related injury. The only question was whether it was attributable to his December 2, 1999, work injury or an alleged work injury on July 22, 2002. Under these circumstances, it is not clear that the presumption of compensability applies. However, assuming arguendo that HRS § 386-85 applied to create a presumption that Kelly sustained an aggravation or new injury on July 22, 2002, there was substantial evidence to rebut the presumption. See Nakamura 98 Hawai`i at 267-68, 47 P.3d at 734-35 (stating that the HRS § 386-85 presumption that an injury is work-related can be overcome by the introduction of substantial evidence rebutting the presumption).
We also reject Kelly's reliance on presumptions arising out of doctrines such as the last injurious exposure rule and the successive injury doctrine. An employer can avoid liability under these doctrines by adducing substantial evidence establishing that the employee's work activities did not aggravate or accelerate the employee's condition. Flor v. Holguin, 94 Hawai`i 70, 85, 90, 9 P.3d 382, 397, 402 (hereinafter "Flor I"), modified in part on reconsideration, 94 Hawai`i 92, 95, 9 P.3d 404, 407 (2000) (hereinafter "Flor II);[3] Sw. Gas Corp. v. Indus. Comm'n, 25 P.3d 1164, 1167 (Ariz. Ct. App. 2001) (requiring evidence establishing that the new injury is an independently compensable work injury for the successive injury doctrine to apply). Here, Metal-Weld/Mullen adduced substantial evidence showing that Kelly did not aggravate his December 2, 1999, injury or suffer a new injury on July 22, 2002.

B.
The LIRAB did not err in limiting its PPD award to 10% of the whole person. The LIRAB's decision was supported by substantial and credible medical evidence.

C.
The procedural errors and irregularities alleged by Kelly are largely irrelevant to his claims in Appeal No. 27208. They provide no basis to attack the LIRAB's determinations that Kelly suffered a recurrence of his December 2, 1999, injury rather than an aggravation or new injury, and that his PPD was limited to 10% of the whole person. We will discuss certain of the alleged procedural errors and irregularities in connection with Kelly's claims against Metal-Weld/HEMIC.
Kelly contends that the LIRAB failed to properly consider tape recorded conversations he offered in evidence. Kelly asserts that this evidence supported his claim that Metal-Weld employees attempted to influence him to refrain from filing a workers' compensation claim after he experienced severe pain while working on July 22, 2002. The record shows that a compact disk (CD) of the recorded conversations and a transcript of the conversations were submitted to the LIRAB as evidence. Although the LIRAB did not permit Kelly to play the CD during the hearing, the LIRAB advised Kelley that "[w]e can listen to it later." Kelly has not shown that the LIRAB abused its discretion in considering the evidence.
We likewise reject Kelly's claim that the LIRAB erred in failing to make specific findings regarding Kelly's allegations of misconduct by Metal-Weld employees. Kelly was allowed to present his allegations of misconduct to the LIRAB as well as his version of what happened on July 22, 2002. The allegations that Metal-Weld employees attempted to improperly influence Kelly's workers' compensation claim was mainly collateral to the central issue of whether Kelly had suffered a recurrence of a prior injury on July 22, 2002, or had suffered an aggravation or new injury. The failure of the LIRAB to address the alleged misconduct in specific findings did not render its decision invalid.

III.

A.
The Director denied Kelly's claim against Metal-Weld/HEMIC and sanctioned Kelly for continuing to pursue a claim against Metal-Weld/HEMIC after Metal-Weld/Mullen acknowledged that Metal-Weld/Mullen provided workers' compensation coverage for any injury sustained by Kelly on July 22, 2002. Kelly was also sanctioned by the LIRAB for appealing the Director's decisions on those matters. The relevant background facts are as follows:
On August 13, 2002, a WC-1 report of industrial injury was filed with the Director and assigned Case No. 7-02-02454. This WC-1 report erroneously listed the date of Kelly's claimed injury as July 23, 2002, instead of the correct date, July 22, 2002. HEMIC, who was Metal-Weld's workers' compensation carrier in July 2002, appeared in the case and Metal-Weld/HEMIC denied liability for the reported injury pending further investigation. On July 22, 2002, however, Kelly was working for Metal-Weld on the Westin Kaanapali resort project. By virtue of a wrap-around agreement between the general contractor on that project and the resort owner, workers' compensation coverage for any work-related injury sustained by Kelly on July 22, 2002, was provided by AIG whose claims were adjusted by Mullen.
On August 21, 2002, a second WC-1 report for a July 22, 2002, industrial accident involving Kelly was filed with the Director and assigned Case No. 7-02-03010. Mullen appeared in this case and Metal-Weld/Mullen denied liability for the reported July 22, 2002, injury. On September 16, 2002, Kelly filed a WC-5 claim for workers compensation benefits for a July 22, 2002, work injury. The WC-5 form identified HEMIC as the insurance carrier for the claimed injury. Kelly's WC-5 claim was apparently filed in both Case No. 7-02-02454 and Case No. 7-02-03010, and Kelly pursued his claim in both cases.
Subsequently, Metal-Weld/Mullen acknowledged that it, and not Metal-Weld/HEMIC, was responsible for providing coverage for any work-related injury sustained by Kelly on July 22, 2002. Based on this acknowledgment, Metal-Weld/HEMIC, by letter dated April 22, 2003, sought a stipulation from Kelly and Metal-Weld/Mullen to dismiss Kelly's claim against Metal-Weld/HEMIC in Case No. 7-02-02454. Metal-Weld/Mullen signed the stipulation, but Kelly refused. On September 4, 2003, the Director determined in Case No. 7-02-03010 that Metal-Weld/Mullen was not liable for Kelly's July 22, 2002, back condition because it was a recurrence of Kelly's December 2, 1999, injury. Based on the Director's decision, Metal-Weld/HEMIC again asked Kelly to dismiss his claim against Metal-Weld/HEMIC in Case No. 7-02-02454. Kelly refused.
On June 18, 2004, at Metal-Weld/HEMIC's request, a hearing was held before the Director on Kelly's claim against Metal-Weld/HEMIC in Case No. 7-02-02454. The Director denied Kelly's claim against Metal-Weld/HEMIC for the alleged July 22, 2002, work injury. The Director also rejected Kelly's claim that a penalty should be assessed against Metal-Weld/HEMIC for the late filing of the WC-1 report on August 13, 2002, and for "forging" the injury date on the report. Instead, the Director assessed Kelly with Metal-Weld/HEMIC's attorney's fees and costs. Kelly appealed to the LIRAB, which affirmed the Director's decisions and assessed Kelly with the attorney's fees and cost incurred by Metal/Weld HEMIC in defending the appeal before the LIRAB.

B.
We conclude that, except for Kelly's claim regarding the improper assessment of attorney's fees, Kelly's arguments that the LIRAB erred in deciding Kelly's case against Metal-Weld/HEMIC are without merit. The LIRAB properly determined that once Metal-Weld/Mullen acknowledged that it was responsible for providing workers' compensation coverage for any work-related injury sustained by Kelly on July 22, 2002, Kelly had no reasonable grounds for continuing to seek compensation for the same alleged work injury from Metal-Weld/HEMIC.
There is no merit to Kelly's claim that Metal-Weld was required to provide workers' compensation coverage through HEMIC as opposed to some other insurance carrier. Insurance coverage was provided to Metal-Weld employees working on the Westin Kaanapali resort project, including Kelly, by the resort owner through AIG and Mullen. Metal-Weld complied with its statutory duty to provide workers' compensation coverage for its employees. The record also does not support Kelly's argument that the consolidation of his appeals before the LIRAB was necessary for the LIRAB to fairly adjudicate his appeals.
Kelly makes much of his contention that Metal-Weld "forged" the date of injury on the August 13, 2002, WC-1 report by changing the date from July 22, 2002, to July 23, 2003.[4] However, the record shows that all of the parties acknowledged and agreed that the correct date of the claimed injury was July 22, 2002. We fail to see how a one-day discrepancy in the date of injury on the August 13, 2002, WC-1 report justified Kelly's refusal to dismiss his claim against Metal-Weld/HEMIC.
Kelly also contends that his desire to seek sanctions against Metal-Weld, pursuant to HRS § 386-95, for the late filing of the August 13, 2002, WC-1 report provided a reasonable ground for his refusal to dismiss the claim against Metal-Weld/HEMIC. We reject this contention. HRS § 386-95 requires an employer to file a report of an employee's injury within seven working days of acquiring knowledge of the injury.[5] An employer who "willfully refuses or neglects" to make the required report "shall be fined by the director not more than $5,000." HRS § 386-95. Kelly does not explain how he was prejudiced by the late filing of the WC-1 report. Moreover, the sanction authorized under HRS § 386-95 is an administrative penalty payable to the Director, not to the employee. See Hse. Stand. Comm. Rep. No. 227, in 1993 House Journal, at 1057. Kelly could have brought Metal-Weld's late filing of the WC-1 report to the attention of the Director by means other than persisting in the pursuit an unfounded claim for benefits against Metal-Weld/HEMIC.
We agree with Kelly that the LIRAB erred in concluding that Kelly had filed two claims. The record shows that Kelly filed only one WC-5 claim and that this claim was then entered in both Case Nos. 7-02-02454 and 7-02-03010. The LIRAB's erroneous conclusion, however, was harmless. The LIRAB's ratio decidendi for determining that Kelly acted without reasonable grounds was that: 1) he pursued compensation against two insurance carriers for the same alleged work injury, and 2) he continued to pursue his claim against Metal-Weld/HEMIC after Metal-Weld/Mullen had acknowledged that it was responsible for providing insurance coverage for any work-related injury sustained by Kelly on July 22, 2002, and after the Director had adjudicated Kelly's claim against Metal-Weld/Mullen. Regardless of whether Kelly filed one or two WC-5 claims, he persisted in pursuing his claim against Metal-Weld/HEMIC long after he lacked any reasonable grounds for doing so. Thus, the LIRAB's erroneous conclusion that Kelly filed two claims was not a significant factor in its determination that Kelly acted without reasonable grounds, and the LIRAB's error did not affect Kelly's substantial rights.

C.
The Director and the LIRAB assessed attorney's fees and costs against Kelly pursuant to HRS § 386-93(a). HRS § 386-93 (1993 & Supp. 2007) provides:
(a) If the director of labor and industrial relations, appellate board or any court finds that proceedings under this chapter have been brought, prosecuted, or defended without reasonable ground the whole costs of the proceedings may be assessed against the party who has so brought, prosecuted, or defended the proceedings.
(b) If an employer appeals a decision of the director or appellate board, the costs of the proceedings of the appellate board or the appellate court, together with reasonable attorney's fees, shall be assessed against the employer if the employer loses; provided that if an employer or an insurance carrier, other than the employer who appealed, is held liable for compensation, the costs of the proceedings of the appellate board or the appellate court, together with reasonable attorney's fees, shall be assessed against the party held liable for the compensation.
(Emphases added.)
Unlike subsection (b) of HRS § 386-93, which refers to "the costs of the proceedings . . . together with reasonable attorney's fees," subsection (a) refers only to the "whole costs of the proceedings." This disparity was present in the original version of the statute when subsections (a) and (b) were enacted together. See 1963 Haw. Sess. L. Act 116, § 1 at p. 122. The omission of any reference to attorney's fees in subsection (a) of HRS § 386-93, coupled with the inclusion of a specific reference to attorney's fees along with costs in subsection (b), demonstrates that the Legislature did not intend to authorize the assessment of attorney's fees under subsection (a).
We conclude that HRS § 386-93(a) does not authorize the assessment of attorney's fees in addition to costs. See Survivors of Medeiros v. Maui Land and Pineapple Co., 66 Haw. 290, 296 n.3, 660 P.2d 1316, 1321 n.6 (1983) (noting that "HRS § 386-93(a) mentions only costs and not attorney's fees"); Survivors of Iida v. Oriental Imports, Inc., 84 Hawai`i 390, 403, 935 P.2d 105, 118 (App. 1997) (describing HRS §386-93(a) as "allow[ing] costs to be taxed against any party for frivolous appeals"). Thus, the LIRAB erred in affirming the Director's assessment of attorney's fees against Kelly and in assessing attorney's fees against Kelly in connection with his appeal to the LIRAB.

IV.
We vacate the LIRAB's decisions: 1) affirming the Director's assessment of attorney's fees incurred by Metal-Weld/HEMIC against Kelly and 2) assessing attorney's fees incurred by Metal-Weld/HEMIC against Kelly in connection with Kelly's appeal to the LIRAB, and we remand the case with instructions that only the costs incurred by Metal-Weld/HEMIC in the pertinent proceedings before the Director and the LIRAB be assessed against Kelly. In all other respects, we affirm the decisions and orders of the LIRAB appealed by Kelly.
NOTES
[1] We note that Kelly raises a plethora of points of error in his opening briefs in both appeals. However, we only address the points of error that were specifically argued. See HRAP Rule 28(b)(7) ("Points not argued may be deemed waived."). We do not address Kelly's claims that the Director erred in its decisions because Kelly is appealing to this court from the decisions and orders of the LIRAB. Metal-Weld/HIH/HIGA did not file a notice of appeal or cross-appeal from the LIRAB's March 22, 2005 decision in Appeal No. 27208. We will consider arguments made by Metal-Weld/HIH/HIGA that support Kelly's position, but will not consider new contentions that were not raised by Kelly. Because Metal-Weld/HIH/HIGA's briefs were filed in support of Kelly's position, we will collectively attribute to Kelly the arguments made by either Kelly or Metal-Weld/HIH/HIGA.
[2] Hawaii Revised Statutes (HRS) § 386-85 (1993) provides in relevant part:

Presumptions. In any proceeding for the enforcement of a claim for compensation under [the Hawai'i workers' compensation law] it shall be presumed, in the absence of substantial evidence to the contrary:
(1) That the claim is for a covered work injury[.]
[3] In Flor I, 94 Hawai`i at 90-91, 9 P.3d at 402-03, the Hawai`i Supreme Court adopted a modified version of the last injurious exposure rule for occupational disease cases. Kelly did not claim that his condition was caused by an occupational disease, but rather claimed that he was injured on July 22, 2002, as the result of a work-related accident.
[4] A Metal-Weld employee explained that the WC-1 report identified July 23, 2002, instead of July 22, 2002, as the date of injury because Kelly had been paid for a full day of work on July 22, 2002.
[5] The injuries covered by this reporting requirement are injuries causing absence of work for at least one day or requiring medical treatment beyond ordinary first aid. HRS § 386-95.